892 So.2d 174 (2005)
Adrian ANDERSON, et al., Plaintiff-Appellant,
v.
Ethel JOHNSON, et al., Defendants-Appellees.
No. 39,109-CA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*175 Adrian Anderson, In Proper Person.
Diane Anderson, In Proper Person.
*176 Sheva M. Sims, Shreveport, for Plaintiff-Appellant Brodrick Collins.
Ronald Miciotto, Shreveport, for Defendant-Appellee Ethel Johnson.
Tracy L. Oakley, for Defendants-Appellees Safeway Insurance Co. and Ethel Johnson.
Before WILLIAMS, STEWART and GASKINS, CARAWAY and MOORE, JJ.
GASKINS, J.
Plaintiff Brodrick Collins appeals from a judgment denying him damages for personal injuries he allegedly sustained in a car accident. We affirm.

FACTS
On the evening of February 10, 2003, 80-year-old Ethel Johnson was driving her van northbound on the inside lane of Hearne Avenue in Shreveport. At the same time, Adrian Anderson was driving an SUV in the inside lane behind Ms. Johnson. Mr. Anderson had a guest passenger, Brodrick Collins.
Hearne Avenue has a left-turn lane at the point where it intersects with Looney Street; there was no signal or other traffic control device. Both Ms. Johnson and Mr. Anderson intended to make a left turn onto Looney Street. Mr. Anderson moved his vehicle into the left turn lane to make a left turn, but Ms. Johnson did not. Still in the inside lane, Ms. Johnson then turned her van left and drove into Mr. Anderson's vehicle. The left side of Ms. Johnson's van struck the right front of Mr. Anderson's SUV. Photos of Mr. Anderson's SUV show a missing left fender flare, a damaged right fender flare and a modest dent on the right side of the front bumper. An estimate of the cost to repair the damage was introduced into evidence.
Shreveport Police Officer Michael Tyler responded to the accident. He said that Mr. Anderson told him that he was in the turn lane, waiting for traffic to clear, when "the van came over and tried to get in the turn lane and ran into his vehicle." It was the officer's impression that Mr. Anderson's vehicle was stopped at the time of the crash. Officer Tyler said that both Mr. Anderson and Mr. Collins denied having any injuries. The officer also described the damage to the Anderson vehicle as minor; for that reason, the officer did not take photos.
Ms. Johnson testified that she intended to get into the left turn lane on Hearne but "before I could get over there, [Anderson] run and hit me, and he was trying to pass me." However, she also initially said that she intended to turn right, remembered there being a red light and an arrow at the intersection, and then later denied that there was a red light. Overall, her testimony was disjointed and confused, and she admitted, while giving her testimony, that she had "never been this confused in my life."
Mr. Anderson testified that he had stopped his vehicle in the turn lane and was waiting for oncoming traffic to clear when Ms. Johnson hit him. He stated that he was "very positive" that his vehicle was at a "complete dead stop." However, in medical records related to treatment for the accident, he indicated on a form that his vehicle was moving; he explained by saying that he "simply checked the wrong thing" on the form.
Mr. Anderson said that he was injured in the accident and that he sought treatment that day at the Willis-Knighton emergency room. He said that he reinjured his left shoulder in the crash; he had dislocated his shoulder in an unrelated incident on February 4, 2003. Thereafter, he underwent chiropractic treatment for about two months. Mr. Anderson displayed *177 poor recollection of his prior shoulder injuries. His medical records showed that he had injured his shoulder in 1999. Also, he did not recall, as his medical records indicated, that he told the doctor on February 4, 2003, that he had a history of frequent shoulder dislocations. Mr. Anderson also related a history of back pain after the accident; his explanation for the duration of this pain differed from his deposition to his testimony at trial and Mr. Anderson also related this pain to drinking "a lot of sodas."
Mr. Collins also testified about his recollection of the accident and about his injuries. His version of the accident was much like Mr. Anderson's; he said that Ms. Johnson pulled into the Anderson SUV while attempting to make a left turn onto Looney Street. He first testified that Mr. Anderson's SUV was stopped at the time of the accident; however, like Mr. Anderson, Mr. Collins had indicated on medical records that Mr. Anderson's vehicle was moving at the time of the crash. He later testified that the Anderson vehicle "wasn't just moving, moving."
Mr. Collins said that he hurt his lower back and right thumb, but he could not recall whether he had three or six weeks of treatment for his injuries. Although he told the police officer at the accident scene that he was not injured, he later told the chiropractor that the pain and discomfort were "noticed immediately." The evidence revealed that he did not go to the emergency room, that he was treated by a chiropractor from February 27, 2003, through March 12, 2003, and that he had one last chiropractic treatment on April 1, 2003. He said that both he and Mr. Anderson went to see the chiropractor for the first time on the same day after he consulted with their mutual lawyer.
After hearing the witnesses and considering the exhibits, the trial court gave reasons for ruling from the bench. The court stated:
The Court's listened carefully to the testimony of the witnesses and has been able to make credibility determinations based on the Court's personal observations of the [witnesses] as they testified and also reviewed the other items of evidence that have been introduced in the case. Based on the exhibits, the testimony, and the credibility determinations, the Court finds the following.
First, the Court believes, frankly, the only credible witness that testified in this case was the policeman. I want to address Ms. Johnson first. She is an elderly and very sweet lady. The Court enjoyed having her here. I believe she was somewhat cognitively challenged, and as she said at one point, "I've never been more confused than I was today," and I think she was being candid with the Court. I know it's very stressful for Ms. Johnson to have to come to court and we appreciate her being here.
I do not find the testimony of the other two witnesses to be credible, other than the policeman. I found Mr. Anderson to be evasive, somewhat hostile. He said that he told the  that he complained, in addition to shoulder pain, of head and lower back pain at Willis-Knighton. I can't find that anywhere in the Willis-Knighton records. If it's there, somebody can point it out to me, but I couldn't find it. His story seemed to evolve under cross, and also to evolve from his deposition testimony. According to the policeman, both he and Mr. Collins said they were not injured. I believe the policeman was credible on that.
I believe it was a mild impact. I've looked at the pictures, and although the pictures and the fact that it was a mild impact are not in and of themselves *178 dispositive, I do think they indicate that it was not a serious accident. What I found interesting was the remark that Mr. Anderson made at the Willis-Knighton emergency room that, you know, he was already pondering litigation, and had a lawyer, and the lawyer would send him to a doctor. And, frankly, I think that's what we have here. I don't believe he was injured in the accident.
Both he and Mr. Collins went to the chiropractor on the same day. Mr. Collins went after he talked with [his lawyer], he volunteered that, and went to the doctor at the same time that Mr. Anderson did. I find it difficult to think that he could have been injured and then waited two weeks, or longer  ... a little over two weeks, and then just coincidentally went to the chiropractor the same day Mr. Anderson did. I believe, frankly, that the check mark that the vehicles were moving, more likely than anything else, just an effort to exaggerate the accident to the chiropractor.
As I said, I don't believe Mr. Anderson is credible on his injuries. I think he was going with litigation in mind. I believe that if he had actually reinjured a supposed dislocated shoulder, he would be hurting at the accident scene. If he had dislocated his shoulder just a few days before, as he says, and he reinjured it, he'd be telling the policeman about it and not saying that he didn't have any injury. He was not credible on what he said occurred at the emergency room. I believe the only credible witness was the policeman.
The court found Ms. Johnson to be the sole cause of the accident and awarded the owner of the Anderson vehicle $1,832.00 for property damage. The court did not award either Mr. Anderson or Mr. Collins any other damages. Only Mr. Collins appealed.

LAW
In a personal injury action, the plaintiff must prove by a preponderance of the evidence that the claimed injuries resulted from the accident at issue. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757. If the medical testimony establishes that it is more probable than not that subsequent injuries were caused by the trauma suffered in the incident, the burden of proof is satisfied. Bruce v. State Farm Insurance Company, 37,704 (La.App.2d Cir.10/29/03), 859 So.2d 296.
An appellate court may reverse the findings of the trial court only when a reasonable factual basis does not exist for the finding and the finding is clearly wrong or manifestly in error. Hines v. Audio Plus, Inc., 38,644 (La.App.2d Cir.8/18/04), 880 So.2d 265. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Hines, supra; James v. Robinson, 38,774 (La.App.2d Cir.8/18/04), 880 So.2d 975. Where a fact finder's conclusion is based on its decision to credit the testimony of one of two or more witnesses, that determination can virtually never be manifestly erroneous or clearly wrong. Hines, supra. The task of the reviewing court is solely to ask whether this fact finder's resolution of the conflicting evidence was reasonable in light of the record as a whole. Hines, supra.
An appellate court should not substitute its opinion for the conclusions made by the district court, which is in a unique *179 position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Leal v. Dubois, XXXX-XXXX (La.10/13/00), 769 So.2d 1182, rehearing denied, XXXX-XXXX (La.11/17/00), 774 So.2d 155.
In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, where the record indicates no sound reason for its rejection. However, one sound reason for rejection is where circumstances cast suspicion or doubt on the reliability of the testimony. James, supra.
A claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician. Perow v. Lenzly, 30,833 & 30,834 (La.App.2d Cir.8/19/98), 716 So.2d 519; James, supra.

DISCUSSION
The appellant argues that the trial court erred as a matter of law in failing to award Mr. Collins general or special damages despite finding Ms. Johnson entirely at fault for the accident. We disagree. Although the trial court found that Ms. Johnson was responsible for the crash, the court also found that the two plaintiffs were not injured and suffered no damages. In the absence of damages, there was no justification for an award.
Although the court's most pointed criticisms regarding credibility were directed at Mr. Anderson, it is clear from the reasons for judgment that the court was no more impressed with the credibility of Mr. Collins than with that of Mr. Anderson. Both men waited more than two weeks after the accident before seeing the chiropractor, and both visited on the same day after Mr. Collins consulted their attorney. Both witnesses made the same self-described "mistake" on the chiropractor's accident report form, wrongly reporting that their vehicle was in motion at the time of the crash. In particular, Mr. Collins had a poor recollection of the course of his medical treatment with the chiropractor. He also told the police officer that he was not injured; however, he told the chiropractor that he immediately had pain and discomfort. Mr. Collins said the accident and the subsequent treatment did not prevent him from doing anything that he did before the accident.
The trial court believed the police officer's report that this was a minor accident and that Mr. Anderson and Mr. Collins did not complain of any injuries. The court disbelieved Mr. Collins' story based upon his demeanor, his erroneous assertion on the medical form, and the timing of his visit to the chiropractor. While soft tissue injuries sometimes fail to immediately manifest themselves, the trial court considered all of the relevant factors in reaching its conclusion that Mr. Collins sustained no injury in this minor accident. Viewing this record as a whole, we cannot say that the trial court was manifestly erroneous or clearly wrong in its decision.

CONCLUSION
Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed against the appellant, Brodrick Collins.
AFFIRMED.
STEWART, J., dissents with reasons.
WILLIAMS, J., dissents for reasons assigned by J. STEWART.
*180 STEWART, J., dissenting.
I must respectfully dissent. The trial judge properly found that Ms. Johnson was the sole cause in fact of the accident and awarded the appropriate property damage award, yet he completely ignored the evidence of Mr. Anderson's or Mr. Collins' physical injuries. The trial judge admits that Ms. Johnson is a "very sweet lady," but he did not find her testimony credible. The majority goes through great lengths to emphasize the fact that the parties did not list every indicia of pain or injury at the time of the completion of the police report. This ignores the very common occurrence of the manifestation of soft tissue injury in the days or weeks following an automobile accident. Although he is not party to this appeal, Mr. Anderson submitted proof of the aggravation of a preexisting shoulder injury. Similarly, Mr. Collins submitted proof of injury that the record shows is undisputably related to the accident at issue. The more salient question that was ignored by the trial judge and the majority is the extent of the injuries suffered by Mr. Collins. If the trial judge made a determination that he had not met his burden of proof that the injuries he had suffered were as extensive as he claimed, but did award a minimum of his specials and some general damage, I would affirm.
Unfortunately, I believe that the trial judge abused his discretion and ignored the fact that the appellant did offer enough evidence to support the fact that he was injured in the accident at issue.