907 So.2d 824 (2005)
Harley David CORDER, Plaintiff-Appellee
v.
Dorothy LIVELY and Farm Bureau Insurance Companies, Defendant-Appellants.
No. 39,780-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*826 John B. Hoychick, Rayville, for Appellants
Theo J. Coenen, III, Rayville, for Appellee
Before STEWART, GASKINS and MOORE, JJ.
*825 GASKINS, J.
The defendants, Dorothy Lively and her insurer, Farm Bureau Insurance Company (Farm Bureau), appeal from a trial court judgment awarding damages to the plaintiff, Harley David Corder, arising out of an auto accident. For the following reasons, we affirm in part, amend in part, and reverse in part the trial court judgment.

FACTS
On May 12, 2003, the plaintiff was driving his 1997 pickup truck which had a three-inch suspension lift. He was stopped at a red light in West Monroe when he was struck from behind by Dorothy Lively. She was driving a Pontiac Grand Am. The plaintiff filed suit against Ms. Lively and her insurer, Farm Bureau, for personal injury and property damage.
A bench trial was held on September 28, 2004. The parties stipulated that the plaintiff was hit from behind, that there was no issue of comparative negligence, *827 and that the plaintiff incurred medical expenses of $2,837.28. Disputed issues included the plaintiff's physical injuries, pain and suffering, vehicle damage, lost wages, and car rental expenses.
After hearing testimony and evidence, the trial court gave oral reasons for its decision. The court essentially stated that this was a close matter due to the numerous inconsistencies in the plaintiff's testimony and contradictions by other witnesses. The court found that the plaintiff had shown some damage, but not to the extent he was claiming. The court awarded $205.12 for repairing the truck, along with $2,500.00 for pain and suffering, $660.00 in lost wages, $485.92 in car rental, and $2,287.28 in medical bills. The awards for lost wages, car rental, and medical bills were reduced from what the plaintiff originally requested. The total amount of the award was $6,138.32. The court also awarded $200.00 in expert witness fees. A judgment to this effect was signed on October 5, 2004. The defendants appealed the trial court judgment.

DAMAGES
The defendants contend that the plaintiff failed to prove by a preponderance of the evidence that he suffered damages related to the accident in question. The defendants point out the numerous inconsistencies in the plaintiff's testimony showing his lack of credibility and argue that the trial court should have rejected his damage claims.
A trial court's factual findings are accorded great weight and will not be disturbed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness's testimony. Marshall v. Caddo Parish School Board, 32,373 (La.App. 2d Cir.10/29/99), 743 So.2d 943. Where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Rosell v. ESCO, supra. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).
In a personal injury action, the plaintiff must prove by a preponderance of the evidence that the claimed injuries resulted from the accident at issue. Anderson v. Johnson, 39,109 (La.App. 2d Cir.1/26/05), 892 So.2d 174. The burden is met by proving through medical and lay testimony that it is more probable than not that the injury was caused by the accident. Whether the accident caused the plaintiff's injury is a factual question subject to the manifest error standard of review. Collins v. Shelter Mutual Insurance Company, 36,528 (La.App. 2d Cir.12/11/02), 833 So.2d 1166, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 539.
When findings are based on determinations regarding the credibility of witnesses, the manifest error standard accords great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Anderson v. Johnson, supra.
An appellate court should not substitute its opinion for the conclusions made by the district court, which is in a unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in the record. Anderson v. Johnson, supra.

*828 Personal Injury
The defendants contend that the plaintiff suffered only a minimal impact in this accident and that he injured his back picking up a tool at work a few days later. The defendants maintain that this was an independent or intervening cause of the plaintiff's back malady for which they are not liable.
In support of their argument that the plaintiff failed to prove damages, the defendants cite the plaintiff's inconsistent testimony regarding the accident. The plaintiff testified that he was stopped at a red light and Ms. Lively struck him from behind traveling at approximately 20-30 mph. He said that he felt a bump and did not know what it was. He got out and observed that Ms. Lively's car was "up underneath my trailer hitch on my truck." He claimed that Ms. Lively said that she was talking on her cell phone at the time of the accident.
On cross-examination, several discrepancies were brought out between the plaintiff's testimony and his deposition. At trial, he stated that Ms. Lively commented before the police arrived that she was going 20-30 mph when she hit him. In his deposition, he said she was going 30-35 mph and that she told this to the police.
Ms. Lively testified that on the date of the accident, she had just been released from the hospital. She was stopped behind the plaintiff at a stop light, but due to her weakened condition, she could not push down on the brake enough to keep from rolling into the plaintiff. She denied that she was talking on the phone or that she was traveling 20-30 mph.
The plaintiff testified that he did not experience any discomfort immediately after the impact, but went to the emergency room anyway to get checked out. At the emergency room, he complained of neck pain. He was given a shot for nausea and sent home. The next day he experienced some soreness. On May 14, the plaintiff said that he bent over to pick up a hammer at work and felt something in his lower back. He then contacted his lawyer and went to the physician recommended by the lawyer. He went to physical therapy for one month. He said that within three to four months after the accident, he was free of pain.
Dr. Dan LaFleur testified that he treated the plaintiff for lumbar strain caused by the accident. He stated that the plaintiff's complaints were all subjective and that he made no objective findings of back problems. Based upon the plaintiff's comments, he was diagnosed with lumbar strain secondary to a motor vehicle accident. He was treated with an anti-inflammatory, a muscle relaxer, and physical therapy. Dr. LaFleur stated that the plaintiff told him that he was hit from the rear by a driver doing 30-35 mph. The doctor said that he relied upon the plaintiff's statements.
Upon questioning by the defense, the doctor opined that a slight bump from the rear would not have produced a lumbar strain. He conceded that bending over to pick up a tool could have caused the plaintiff's back complaints. Based upon the scenario posed by the defense, the doctor could not say, more probably than not, that the back pain was the result of the auto accident as opposed to bending down at work to pick up a tool.
The trial court recognized the "divergence of opinion" as to whether the plaintiff suffered any damages in this accident. The court determined that property damage and personal injury could be caused even by a slight bump. The court also considered the plaintiff's testimony that he was not suffering any back pain before this accident. Even though the plaintiff *829 claimed $2,837.28 in medical expenses, the trial court reduced that amount by $550.00 by disallowing some expenses incurred for physical therapy. The trial court awarded $2,287.28 in medical expenses.
Based upon this record, we find that the trial court was not manifestly erroneous or clearly wrong in determining that, although the plaintiff did not sustain a large impact in the accident, he did suffer a small amount of personal injury. The trial court reduced the amount awarded to the plaintiff to reflect the small impact sustained and the minor injury incurred. We affirm this portion of the trial court judgment.

Lost Wages
The defendants contend that the trial court erred in awarding damages to the plaintiff for lost wages. They contend that the plaintiff was not injured in this accident.
A plaintiff bears the burden of proving his claim for lost earnings. For purposes of determining damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim, and such proof may consist only of the plaintiff's testimony. Reasonable certainty is the standard. Driscoll v. Stucker, XXXX-XXXX (La.1/19/05), 893 So.2d 32. To recover for actual lost wages, a plaintiff must prove positively that he would have been earning wages but for the accident in question. Boyette v. United States Automobile Association, XXXX-XXXX (La.4/3/01), 783 So.2d 1276.
The plaintiff testified that he was the foreman/superintendent for a drywall company earning $16.50 per hour. He asserted that he had authority to hire and fire employees. His employer required a doctor's release to go back to work. The plaintiff claimed that when he presented the release, his employer told him he did not have any work for the plaintiff. He said he felt that he lost his job because of this accident.
The plaintiff's former employer at the drywall company stated that the plaintiff was not a superintendent and did not have the authority to hire and fire employees as the plaintiff claimed. He also said that the plaintiff had printed business cards saying that he was a field superintendent. The employer reprimanded the plaintiff for that action. The employer said that the plaintiff took off to do personal business and that he also previously took some lights from a job site. He stated that the plaintiff was supposed to be at a job site and not driving around at the time the accident occurred. The employer said that the plaintiff never brought a doctor's work release and he decided not to rehire the plaintiff because of all the problems with the plaintiff.[1]
The trial court awarded the plaintiff $660.00 in lost wages. The trial court allowed the plaintiff five days lost wages at $16.50 per hour, based on an eight-hour work day. Given the trial court's decision that the plaintiff suffered a minor personal injury in this case, allowing five days' lost wages is not an abuse of the trial court's discretion. We affirm the trial court's award of $660.00 for lost wages.

Property Damage
The defendants maintain that the trial court erred in awarding property damage for the truck repair. They point out that the independent witnesses testified that *830 the minimal impact in this collision was not sufficient to damage the suspension lift block on the plaintiff's truck.
In support of this argument, the defendants again point to the contradictions in the plaintiff's story and the disparity between his version of events and that of the other witnesses. At the time of the accident, the plaintiff claimed that he could only see damage to the tailpipe on his truck. Several days after the accident, he noticed that the truck was not driving properly. He determined that the block at the rear of the truck, a part of the suspension modification, had been damaged. The plaintiff had previously stated that he had his truck repaired within a couple of weeks of the accident. At trial it was shown that the truck was not fixed until over a month later.
The plaintiff also stated that the hood of Ms. Lively's car was extensively damaged. Other witnesses testified that there was only slight damage to the front bumper of her car. A picture of the vehicle placed into evidence supports this minimal damage description.
Ms. Lively stated that the impact was very minimal and did little damage to either vehicle. She denied that the hood of her car was damaged and asserted that the Styrofoam behind her bumper was not even damaged.
The police officer who worked the accident testified that there was only minor impact between the two vehicles. If Ms. Lively had been traveling at 20-35 mph, she believed that the damage would have been more extensive. The officer filled out a minor accident report. According to the officer, the plaintiff saw her several days later and asked her to change her report to a regular accident form. The plaintiff denied this.
Farm Bureau sent two separate appraisers to evaluate the damage to the plaintiff's vehicle. One appraiser thought that the damage to the suspension lift block was old and did not occur as a result of this accident. He estimated that the slight damage to the plaintiff's tailpipe, which was attributable to this accident, could be repaired for $43.80. The other appraiser testified that a significant impact would have been required to damage the suspension block. A 30-mph impact would also have caused more damage to the bumper of the truck than actually occurred.
The assistant manager of Jim Taylor Chevrolet, where the plaintiff's vehicle was repaired, testified that the suspension lift block of the plaintiff's truck was broken. He stated that it is very hard to break a suspension block.
The trial court found that there are occasions when a slight bump will cause some damage to a vehicle and awarded the plaintiff $205.12 for repairs to his truck. Based upon the overwhelming evidence and testimony in this case, we find that the trial court erred in the amount awarded for this element of damages. Both appraisers and the assistant manager of the dealership agreed that the impact sustained in this collision was simply insufficient to cause the damage to the suspension lift block seen in this vehicle. Photographs show only minor scratches to both vehicles, negating the plaintiff's assertions as to the degree of impact and damage sustained. In this case, the evidence shows that the plaintiff sustained only damage to his tailpipe as a result of this accident. Accordingly, we reduce the award for property damage to $43.80, the amount estimated for repair of this damage.

Loss of Use of Vehicle
The defendants contend that the trial court erred in making an award for *831 the rental car rather than finding that the plaintiff failed to mitigate his damages. The plaintiff stated that when he began having trouble with his truck, he parked it and drove a rental car for three weeks at a cost of more than $600.00 because he did not have the money to fix it.
As discussed above, because we find that the damage to the suspension lift block was not caused by this accident, and since his vehicle was "usable," the plaintiff is not entitled to recovery for car rental expenses for loss of use of his truck. That portion of the trial court judgment allowing recovery for car rental is reversed.

CONCLUSION
For the reasons stated above, we affirm those portions of the trial court judgment awarding the plaintiff $2,287.28 in medical expenses and $660.00 in lost wages. We amend to reduce the award for property damages to $43.80. We reverse that portion of the trial court judgment awarding the plaintiff $485.92 in rental expenses for loss of use of the vehicle. The defendants have not attacked the award of $2,500.00 for pain and suffering or $200.00 for expert witness fees. Therefore, the total award to the plaintiff is $5,491.08 plus $200.00 in expert witness fees. Costs in this court are assessed to the defendants.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] Dr. LaFleur testified that he gave the plaintiff only a verbal release to return to work, not a written one.