859 So.2d 225 (2003)
Exvina NELOMS, Plaintiff-Appellee,
v.
EMPIRE FIRE & MARINE INSURANCE COMPANY, North Caddo Hospital Service District and Kristie G. McMullan, Defendants-Appellants.
No. 37,786-CA.
Court of Appeal of Louisiana, Second Circuit.
October 16, 2003.
*227 Mayer, Smith & Roberts, L.L.P. by David F. Butterfield, Shreveport, for Appellants.
Norman R. Gordon & Assoc., L.L.C. by W. Brett Cain, Shreveport, for Appellee, Exvina Neloms.
Hubley, Marcotte & Rhodes by Craig O. Marcotte, Shreveport, for Appellee, Louisiana Farm Bureau Mutual Insurance Co. and Exvina Neloms.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a trial court judgment in favor of Plaintiff, Exvina Neloms ("Neloms"), and against Defendants, Empire Fire and Marine Insurance Company ("Empire Fire"), North Caddo Hospital Service District ("North Caddo") and Kristie G. McMullan[1] ("McMullan") (collectively "Defendants"). Defendants now appeal the judgment of the trial court. For the reasons stated herein, we affirm.

FACTS
On May 13, 1999, Neloms' vehicle collided with an ambulance driven by McMullan at the intersection of Hearne Avenue and Greenwood Road in Shreveport, Louisiana.[2] At the time of the accident, Neloms was heading west on Greenwood Road through a traffic light that was green in her favor. At the same time Neloms was driving into the intersection, McMullan was also driving her ambulance into the intersection against a red light, heading south on Hearne Avenue. McMullan was transporting a patient, a doctor, a paramedic and a passenger on an emergency run from Vivian, Louisiana, to LSU Medical Center in Shreveport. McMullan did not stop her ambulance before entering the intersection.
As the ambulance entered the intersection, it struck the passenger side of Neloms' vehicle. The momentum of the vehicles and the force of the collision carried both vehicles onto the center island on the west side of Greenwood Road. Both Neloms and McMullan were injured and transported from the scene by ambulance for emergency treatment. McMullan injured her ankle and hit her head in the accident. Medical records reflect that Neloms was packaged in a "full spine" brace prior to transport.
Neloms was taken to LSU Medical Center with complaints of neck, hip and back pain. A doctor examined her and then released her. The next day Neloms began treatment with a chiropractor, Randall Lord ("Lord"). Medical records show that Lord diagnosed Neloms with lumbar and cervical strain/sprain with accompanying soft tissue damage, muscle spasm, edema and spinal joint dysfunction. Neloms saw Lord intermittently through July 19, 1999, at which time she was released at maximum medical improvement. Her bill for chiropractic treatment was $2,436 and she incurred $20.77 in records fees. She missed four days of work due to her injury; at five hours per day at $5.15 per hour she lost $103 in wages.
*228 Neloms filed suit against North Caddo, its insurer, Empire Fire, and McMullan for property damage and personal injuries arising from the accident. North Caddo and Empire Fire filed a reconventional demand against Neloms and her liability insurer, Louisiana Farm Bureau Mutual Insurance Company ("Farm Bureau"), seeking payment for damage to the North Caddo vehicle. Farm Bureau filed a cross-claim against McMullan, Empire Fire and North Caddo for the $2,930.72 in medical payments it had paid Neloms under that portion of her auto policy. The parties tried the matter on the merits on August 22, 2002.
At trial, Neloms testified that she did not see any car on Hearne Avenue run the red light before she got to the intersection. She said that she was going approximately 20-25 miles per hour and that she did not hear a siren or see emergency lights prior to entering the intersection. Neloms testified that she did not recall any vehicles stopped at the green light on her side of the intersection when she was heading west through the intersection.
McMullen testified that she had the lights and "very loud" siren operating on the ambulance"running hot"because the patient being transported was in critical condition. She stated that, as she approached the intersection, there were several cars in the left and right lanes of travel and one car in the left turn lane. The cars were stopped because the traffic light was red. Protocol required that she pass other vehicles on the left, insofar as possible, so she drove the ambulance into the turn lane. McMullan said that she changed the tone of the siren on the ambulance to alert the stopped drivers of her presence. She testified that, when she did this, the driver who was stopped in the left turn lane in front of her went through the red light to get out of her way. McMullan also stated that the east and westbound traffic on Greenwood Road was stopped as well. She testified that she was "creeping" through the intersection at 3-5 miles per hour. As the ambulance entered the intersection, it struck the passenger side of Neloms' vehicle.
The deposition of the responding officer, Shreveport Police Officer Glen Vincent, was introduced into evidence in lieu of his testimony. Officer Vincent said that the intersection was well lit. He did not write either driver a ticket, but he said that McMullan told him that she was stopped when the collision occurred and that Neloms' vehicle hit her ambulance. McMullan testified that she did not remember telling the officer that she was stopped. It was Officer Vincent's opinion that the ambulance driver failed to yield, noting that the ambulance suffered heavy damage to its front end and Neloms' vehicle suffered heavy damage to the passenger side. None of the other passengers in the ambulance testified at trial.
Neloms testified that she had not driven her car since the accident. Instead, her husband, who is disabled and does not work, drove her to work and to the doctor in his car. She did not testify that she had to rent a car; indeed, she testified that she has been too scared or nervous to drive after the accident because "it just seemed that everybody was going to run over me." Her husband confirmed this, saying that, since the accident, she was very "sensitive" when riding as a passenger with him.
Neloms did not testify as to the damage to the car, but several photos of the car taken after the accident were introduced into evidence. Three of the photos were taken in the daytime and clearly show the extent of the damage to the car. Both passenger side doors and the rear of the right front fender are badly crushed; except for a rear quarter window, no glass is *229 visible in either of the side windows and the windshield is shattered on the right side. Three other photos of both vehicles taken at the scene of the accident are included in the record and the extensive damage to the passenger side of the car is visible in two of the photos. Over the objection of Defendants, the trial judge allowed into evidence on behalf of Neloms a copy of a "Kelley Blue Book Suggested Retail Report," gathered from the internet website www.carpoint.msn.com, stating that the retail value of Neloms' vehicle, a 1982 Oldsmobile Delta 88 Royale four-door sedan, in excellent condition with 99,000 miles and a V-6 engine, was $1,000. The repair estimate for the ambulance of $10,808.30 was introduced into evidence.
The trial judge took the matter under advisement and rendered verbal reasons for judgment, finding that McMullan was entirely at fault for the accident. Holding that Nelom's vehicle was fully in the intersection when it was "broadsided" by the ambulance, the trial judge also found that "the ambulance may have had its emergency lights on but it did not have a siren on at the time of this collision." The trial judge awarded Neloms all of her alleged special damages, including $1,000 for the damage to her car, $750 for the loss of use of her vehicle and $6,345 for general damages. Judgment was also rendered in favor of Farm Bureau and against Empire Fire and North Caddo in the amount of $2,930.72. The trial judge dismissed Defendants' claims against Neloms and Farm Bureau. Defendants now appeal, raising the following assignments of error (verbatim):
1. Judge Collins was clearly wrong in apportioning 100% fault to Ms. McMullan, or, alternatively, that he was clearly wrong in not apportioning comparative fault to Ms. Neloms;
2. The trial court erred in awarding property damages based upon a hearsay report and with no supporting testimony; and,
3. The trial judge erred in awarding Ms. Neloms damages for loss of the use of her vehicle.

DISCUSSION
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless such finding is "clearly wrong;" and, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra. In fact, "where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." Stobart, supra.

Allocation of Fault
Defendants first urge that the trial court erred in allocating all of the fault for the accident to McMullan. La. C.C. art. 2323 provides, in part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, *230 ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
In Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, the supreme court explained the appellate review of a fact finder's allocation of fault:
The trier-of-fact is owed great deference in its allocation of fault. Even if the reviewing court would have decided the case differently had it been the original trier of fact, the trial court's judgment should be affirmed unless manifestly erroneous or clearly wrong. Clement v. Frey, 95-1119 c/w 95-1163 (La.1/16/96), 666 So.2d 607. In determining percentages of fault, this Court has stated that the trier-of-fact must consider both the nature of the conduct of all parties and the extent of the causal relationship between the conduct and the damages claimed. We have outlined five factors that may influence the degree of fault assigned: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La. 1985).
La. R.S. 32:24 provides:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
The supreme court has found that La. R.S. 32:24 contains two alternate standards of care imposed on the emergency vehicle driver, depending on the circumstances. *231 Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175. If an emergency vehicle driver's actions follow subsections A, B and C of La. R.S. 32:24, he or she can only be held liable for actions which constitute reckless disregard for the safety of others, i.e., gross negligence. Id. If the emergency vehicle driver's conduct did not follow subsections A, B and C of La. R.S. 32:24, such driver's actions will be gauged by an ordinary standard of "due care." Id. See also Pope v. Prunty, 37,395 (La.App.2d Cir.8/20/03), 852 So.2d 1213.
La. R.S. 32:125 provides, in part:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
The duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, or under the circumstances should have observed or heard, the audible and/or visual warnings of such a vehicle. Pope, supra. The burden of proving negligence of the non-yielding motorist rests on the party asserting the same. Id.
In holding McMullan entirely responsible for the accident, the trial judge found that she was not using the vehicle's siren at the time of the crash even though she "may" have been using the warning lights. The only two witnesses who testified about the use of emergency lights and sirens on the ambulance were Neloms and McMullan. There were four other individuals in the ambulance and none of them testified at trial as to the status of the ambulance siren. Moreover, the significant collision between the vehicles indicates that McMullan did not stop or slow down when she went through the intersection and she had to have been traveling at a much greater speed than the 3-5 miles per hour to which she testified. La. R.S. 32:24(C) requires an emergency vehicle driver to use lights and/or sirens "sufficient to warn motorists of their approach" and the trial judge apparently concluded that the use of warning lights alone was insufficient. McMullan's actions did not follow La. R.S. 32:24; and, thus, her actions are gauged by an ordinary standard of due care.
Neloms said that her view of the north side of the intersection was partially blocked by the hospital and its parking lot until she was "at the intersection." Since Neloms' light was green and she was proceeding at a normal speed, the ambulance's use of the siren would have been very important to warn Neloms of the emergency vehicle's approach. After hearing the contradictory testimony of Neloms and McMullan, the trial judge found Neloms to be the more credible witness. Given the trial court's decision to credit Neloms' testimony that she did not hear a siren and that nothing would have prevented her from hearing the siren, we hold, after reviewing the record in its entirety, that the trial court was reasonable in finding that the ambulance driver's use of warning signals was not sufficient. McMullan breached her duty of care by not adequately warning Neloms that her ambulance was approaching the intersection.
Since the ambulance driver was not in compliance with La. R.S. 32:24(A), (B) and (C) at the time of the accident, and because we find no error in the trial court's *232 evident conclusion that Neloms did not breach her duty to see the ambulance, we will not disturb the trial court's allocation of fault. Defendants' assignment of error is without merit.

Special DamagesValue of Car
Appellants urge that the trial court erred in awarding Neloms $1,000 for the damage to her car and in basing its valuation of the damage on the Kelley Blue Book value she submitted. "Special damages" are those which either must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty, such as the plaintiff's medical expenses incurred as a result of the tort. Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 01-2582 (La.12/14/01), 804 So.2d 647. The discretion afforded the trier of fact to assess special damages is narrower or more limited than the discretion to assess general damages. Moody, supra; Eddy v. Litton, 586 So.2d 670 (La. App. 2d Cir.1991), writ denied, 590 So.2d 1203 (La.1992). Some special damages, such as medical and related expenses, cost to repair or replace damaged property, loss of wages, etc., are easily measured. Id.
When a car has been damaged beyond repair as the result of an accident, the owner is entitled to the market value of the vehicle before the accident, less salvage value, if any. Smith v. English, 586 So.2d 583 (La.App. 2d Cir. 1991), writ denied, 590 So.2d 80 (La.1991), citing Coleman v. Victor, 326 So.2d 344 (La.1976). Testimony by an owner of a car as to its value can be sufficient proof with which to sustain an award. Williams v. Louisiana Indemnity Company, 26,887 (La.App.2d Cir.6/21/95), 658 So.2d 739; Smith, supra.
In this case, the evidence of the value of and damage to Neloms' vehicle consisted of a Kelley Blue Book valuation of the car in excellent condition for retail sale and the photos of the car after the accident. Although there was no testimony that the car was a total loss, the photos clearly show extensive damage to the passenger side of the vehicle consistent with the likelihood of total loss of this 1982 automobile. Further, we find no error in the court's decision to assign at least some weight to the Kelley Blue Book valuation. La. C.E. art. 803(17) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(17) Market reports, commercial publications. Market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations.
Publications like the Kelley Blue Book are widely used and relied upon by the public. In State v. Batiste, 99-1481 (La.App. 1st Cir.3/31/00), 764 So.2d 1038, writ denied, 00-1648 (La.6/22/01), 794 So.2d 778, the court held that the introduction of the NADA Blue Book[3] into evidence to determine the value of a vehicle was perfectly acceptable and was not inadmissible hearsay according to the markets quotations provision of La. C.E. art. 803(17). The court specifically found that the supporting testimony of an expert appraiser did not have to accompany introduction of the NADA Blue Book into evidence. Defendants argue that there was no evidence to show that the vehicle was in excellent condition prior to the accident; however, taking *233 into account that the trial court had photos of the car in addition to this report, we find no reversible error in the court's decision to award Neloms $1,000 for her property damage. Defendants' assignment of error has no merit.

Loss of Use
Appellants finally argue that the court erred in awarding Neloms $750 for the loss of use of her car. Damages for loss of use of a car which has been totaled are recoverable only for a reasonable time after the plaintiff learns that the car is a total loss. Williams, supra. This court has held that a reasonable time to replace the destroyed vehicle is a period of 30 days after discovery that the car is a total loss. Williams, supra, citing Bonner v. Louisiana Indemnity Co., 607 So.2d 915 (La.App. 2d Cir.1992), and Prothro v. Dillahunty, 488 So.2d 1163 (La.App. 2d Cir. 1986). The measure of loss-of-use damages is normally the cost of renting a substitute vehicle until a replacement vehicle is purchased. This award, however, need not be restricted to rental. Williams, supra. The trial court is given a great deal of discretion to determine the damages awarded for loss of use of a vehicle. Alexander v. Qwik Change Car Center, Inc., 352 So.2d 188 (La.1977). In Alexander, the supreme court found that the trial judge did not abuse his discretion when he awarded the plaintiff $1,000 for loss of use of his vehicle, which was stolen. The court held that there was no doubt that the plaintiff had suffered considerable inconvenience and mental anguish from the loss of use of his vehicle. Alexander, supra.
Although Neloms did not testify that she replaced her vehicle, she said that she had been too nervous to drive after the accident out of fear that she would be involved in another accident. The fact remains that Neloms was inconvenienced and deprived of the use of her car and had to be transported thereafter in her husband's car. Neloms obviously suffered mental anguish in the loss of her car. We cannot say that the trial court abused its discretion in awarding $750 for this element of damages which, amortized over a 30-day period, amounts to $25 per day. Defendants' assignment of error is without merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendants, Empire Fire and Marine Insurance Company, North Caddo Hospital Service District and Kristie G. McMullen.
AFFIRMED.
NOTES
[1] McMullan has remarried since the time of the accident. Her current name is Kristie Churchill.
[2] Greenwood Road runs east-west and Hearne Avenue runs north-south.
[3] The NADA book is very similar to the Kelly Blue Book in that it lists the value of different cars for different years. NADA stands for the National Automobile Dealers Association.