989 So.2d 273 (2008)
Naomi SLONE, Plaintiff-Appellant
v.
Michael GREBER and City of Shreveport Police Department, Defendants-Appellees.
No. 43,471-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*275 F.Q. Hood, Jr., Joel K. Murphy, Bossier City, for Appellant.
Curtis R. Joseph, Jr., Ronald F. Lattier, Shreveport, for Appellees.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
CARAWAY, J.
Plaintiff and a police officer were involved in a two-vehicle collision at the intersection of two Shreveport streets. The accident occurred as plaintiff proceeded through a green light in her lane of travel and struck the rear passenger side of the police vehicle as it traveled through the intersection with lights activated in response to an emergency call. The trial court granted the officer statutory immunity under La. R.S. 32:42(C) and rejected plaintiff's claim for damages. This appeal ensued. We affirm.

Facts
At approximately 6:30 a.m. on December 30, 2004, Naomi Slone was driving home after completing a night shift of work as a sitter. The lighting was dark and the streets were dry. Slone traveled north on Centenary Boulevard at the intersection of Stoner Avenue with her headlights activated. Centenary is a two-lane roadway which has a turn lane at its intersection with Stoner. Stoner is a four-lane roadway through the intersection. Slone traveled straight through the intersection in the far right lane of Centenary.
As she approached the intersection, Slone testified that she slowed down when she noticed a police car stopped at the Stoner traffic signal facing west. The police vehicle was driven by Patrol Officer Jeff Couch. Slone stated that she observed that the traffic light was green, and she proceeded through the intersection at a speed of less than 35 miles per hour with a brief glance to the left. Slone did not see the emergency lights of the vehicle driven by Shreveport Police Officer Michael Greber as he approached the intersection of Stoner and Centenary traveling east in response to a priority one call. Even as *276 she drove into the side of the patrol car, Slone reported never seeing its flashing lights which were undisputedly engaged.
The Greber police vehicle proceeded through the intersection with its overhead emergency lights and the "wig-wag" lights in front of the car activated, but with no siren. Because of his concern for the safety of the intersection, mainly a hill to the south on Centenary and the ninety degree right turn of Centenary Boulevard immediately to the north of the intersection, Greber slowed in response to the red light to approximately fifteen to twenty miles per hour while proceeding through the intersection. Although Greber claimed to have looked both left and right, he did not observe Slone continuing north on Centenary and the two cars collided, with Slone's vehicle striking the right rear wheel assembly of Greber's police car.
Officer Couch confirmed that he observed that Greber was over half way through the intersection when Slone hit the right rear passenger side of the car. Couch estimated that Greber was traveling approximately twenty to twenty-fives miles per hour when he was hit.
The camera of Greber's police vehicle recorded the accident, and the video showed that Greber's lights and brakes were activated when his car was hit. It also documented that Greber slowed as he entered the intersection.
After the impact, Slone complained of chest, knee and left shoulder pain and she was transported to a hospital by ambulance. Slone received medical treatment for her back and shoulder pain, including left rotator cuff surgery, through November 2005.
On December 27, 2005, Slone instituted a personal injury suit against Greber and the City of Shreveport (hereinafter "defendants") arising from the accident. She claimed freedom from fault, alleging instead that Greber's negligence was the sole cause of the accident. The defendants answered the suit arguing that it was Slone's failure to yield the right of way to the emergency vehicle under La. R.S. 32:125[1] that was the sole cause of the accident. The defense also asserts that Greber's actions were appropriate under the statutory allowance for emergency drivers in La. R.S. 32:24.
After hearing the testimony of Slone, Greber and eyewitness Officer Couch, the trial court found that Greber's actions were in compliance with La. R.S. 32:24 and dismissed Slone's claims.

Discussion
On appeal, Slone argues that the trial court erred in finding her solely at fault in causing the accident and in failing to award her damages. She contends that the tests of the emergency vehicle statute under the circumstances of this case required Greber to use the audible signals of his patrol car and to stop before entering the intersection against the red light.
The emergency vehicle statute, La. R.S. 32:24 (hereinafter the "Statute"), provides as follows:

*277 24. Emergency vehicles; exceptions
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.
The purpose of the Statute is to provide immunity from liability to drivers of emergency vehicles, under specific circumstances. Rabalais v. Nash, 06-0999 (La.3/9/07), 952 So.2d 653.
If, and only if, an emergency vehicle driver's actions fit into Subsections A, B and C of La. R.S. 32:24, will an emergency vehicle driver be held liable only for actions which constitute reckless disregard for the safety of others. On the other hand, if the emergency vehicle driver's conduct does not fit Subsections A, B and C of La. R.S. 32:24, such driver's actions will be gauged by a standard of "due care." Rabalais, supra, citing, Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175. The failure of "due care" under Subsection D of the Statute is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Rabalais, supra.
The duty to yield the right of way to an emergency vehicle arises only when a motorist observes or hears, or under the circumstances should have observed or heard, the audible and/or visual warnings of such vehicle. Neloms v. Empire Fire and Marine Ins. Co., 37,786 (La.App. 2d Cir.10/16/03), 859 So.2d 225; Pope v. Prunty, 37,395 (La.App. 2d Cir.8/20/03), 852 So.2d 1213, writ denied, 03-2496 (La.11/26/03), 860 So.2d 1137. The burden of proving negligence of the non-yielding motorist rests on the party asserting the same. Id.
In Neloms, supra, an ambulance driver broadsided the plaintiff's vehicle in an intersection while responding to an emergency in heavy traffic. The plaintiff had the green light in her favor, and the ambulance driver was found to be totally at fault under the Statute for failing to give sufficient warning and for proceeding improperly through the congestion of that traffic setting.
It is well settled that a court of appeal may not set aside a trial court's or jury's finding of fact in the absence of *278 manifest error or unless it is clearly wrong. Rabalais, supra. To reverse a fact-finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Rabalais, supra; Mart v. Hill, 505 So.2d 1120 (La.1987). Where the jury's findings are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court's ruling is manifestly erroneous, or clearly wrong. Blair v. Tynes, 621 So.2d 591 (La.1993). The issue to be resolved by a reviewing court is not whether the trier-of-fact was right or wrong, but whether the fact-finder's conclusion was a reasonable one. See Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993); Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991). Where there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong. Stobart, supra. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The three initial Subsections of the Statute work in tandem to define the emergency situation and the standards for actions allowed to meet the emergency. The parties do not dispute that under Subsection A Greber was an emergency vehicle driver responding to an emergency call. The emergency dealt with a crime in south Shreveport, a long distance from the accident scene. Nevertheless, the pressing need for Greber to proceed with haste for the call is not questioned by Slone.
Accordingly, under Subsection B, Greber was allowed to exceed the speed limit and to proceed through a red light signal, "but only after slowing down or stopping as may be necessary for safe operation" of the vehicle. Under Subsection C, Greber was charged to utilize his "audible or visual signals sufficient to warn motorists" of his approach through the intersection against the red light.
Slone's appellate argument insists that Greber's actions fell below the required standards of Subsections B and C and that he was required to stop and use his audible signals. The standards of the Statute (or Greber's legal duties) taken together present the following question: did Officer Greber enter the intersection in a manner "necessary for safe operation" of his vehicle moving against the red light and did he give notice "sufficient to warn motorists" such as Slone who would otherwise have the right of way through the intersection? Regardless of the past jurisprudential controversies over the meaning of Subsection D of the Statute, in order for Greber to have been in compliance with Subsections B and C, his actions were required to be necessary and reasonable, giving sufficient warning. For the following reasons, we find that the trier-of-fact could conclude that Greber did not breach the applicable standards of Subsection B and C and acted reasonably in giving Slone sufficient notice under the circumstances.
At the early morning time of the accident, traffic through the intersection was minor. There was no report by the three drivers who testified that there was any other traffic moving through the intersection *279 as Greber approached. The video of the crash shows unequivocally that Greber slowed substantially as he approached and entered the intersection. The video also documented the activation of the brakes as Greber entered the intersection. Slone's sight line before entering the intersection was aided by the vacant corner lot to her left in the direction where Greber's vehicle was traveling. Greber was most concerned by the blind corner presented to any driver traveling on Centenary from the north and adjusted his speed through the intersection to accommodate such risk. Subsection B of the Statute presents a choice for either stopping or merely slowing in order for the emergency vehicle to travel through an intersection against a red light. We do not find that these conditions mandated Greber to stop.
Regarding the signals on the patrol car, the Statute does not require that both audible and visual signals be given. Therefore, a fact-sensitive inquiry exists regarding whether the flashing lights in this case as opposed to audible signals were sufficient warning. The evidence shows that the accident occurred just before dawn when the streets were relatively dark. The flashing lights atop the vehicle could be viewed by the trial court as reasonable notice in the darkness of this emergency situation.
A final view of the evidence which supports the trial court's ruling concerns Slone's negligent breach of her duty at the time of the accident. Slone does not strongly argue in brief that she was entirely free from fault, emphasizing instead the application of comparative fault. Greber's car was traveling on the four-lane Stoner Avenue in the inside lane, not the lane closest to Slone as she entered the intersection. She did not report swerving to the left to avoid the crash. Therefore, the police officer had entered the intersection, crossed two lanes of Centenary and was beginning to exit the intersection when his patrol car was hit on the rear side. While Slone admits that she never saw the patrol car until immediately upon impact, the facts clearly demonstrate that she should have observed the vehicle and its emergency lights before Greber began to enter the intersection to her left. Slone's telling admission is that she reacted upon seeing Officer Couch's car on her right. Ironically, a reasonable view of this admission which supports the judgment is that Slone's attention was focused on the stopped patrol car to her right instead of the moving emergency vehicle to her left.
As we noted above, after an intersectional collision in Neloms, supra, this court affirmed a finding of 100% fault on the driver of an ambulance in a collision at an intersection. There, the plaintiff driver was found to have proceeded well into the intersection without sufficient warning of the emergency and the plaintiff's car was rammed in the side by the ambulance. In contrast, the trier-of-fact in the present case found the facts of this collision to be almost the opposite of those in Neloms. Like Neloms, one of the two drivers could be found totally at fault for this accident; but in this case, it was the emergency driver who was not negligent because he complied with the special duties of the Statute, slowing reasonably and giving sufficient warning to the plaintiff.

Conclusion
We affirm the ruling of the trial court dismissing plaintiff's claims against the defendants. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] La. R.S. 32:125 provides, in pertinent part:

A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, or of a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
* * *
C. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.