Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,188-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ISABELLA CRISWELL                                    Plaintiff-Appellee

versus

COLLETTE KELLEY, CITY OF                             Defendant-Appellants
SHREVEPORT D/B/A
SHREVEPORT POLICE
DEPARTMENT AND
AMERICAN ALTERNATIVE
INSURANCE CORPORATION

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 607,014

Honorable Michael Pitman, Judge

* * * * *

LEON L. EMANUEL                                      Counsel for Appellant
                                                     Collette Kelley


SEABAUGH, JOFFRION, SEPULVADO                        Counsel for Appellee
& VICTORY, LLC.
By: Alan T. Seabaugh
    Michael C. Melerine


* * * * *

Before MOORE, THOMPSON, and HUNTER, JJ.

**MOORE, C.J.**

Lieutenant Colette Kelly, a Shreveport police officer, appeals a judgment that found her 50% at fault in an intersectional collision, awarded her only $10,000 in general damages, and denied her claim for special damages.[1] Isabella Criswell, the driver struck by Lt. Kelly, answers the appeal, contesting her own 50% fault and contending the general damages are excessive. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

The accident occurred around 3:15 pm on November 20 (the Monday before Thanksgiving), 2017. On fall break, the 17-year-old Ms. Criswell and her friend, Kennedy Jacobs, had been out shopping and eating, and were returning to Ms. Jacobs's house. Ms. Jacobs was leading in her Jeep Compass, and Ms. Criswell was following in her Kia Optima. They were driving west on Stratmore Dr., both in the left lane, when they came to the intersection with Youree Dr. The light was red, so they waited. When the light turned green, Ms. Jacobs went through the intersection. Ms. Criswell then started across, but before she could get through, she was struck in the side by a Shreveport Police unit driven by Lt. Kelly.

Lt. Kelly had been assigned to the east side of town that day, but shortly after 3:00 pm, she received an "active shooter" call to Werner Park Elementary, so she took off at high speed, south on Youree Dr. She was driving a marked Chevy Caprice equipped with interior flashing lights but no top-mounted lights. A fellow SPD officer, Jaquerus Turner, was following her in his own unit. The speed limit on that stretch of Youree Dr.

---

[1] The lieutenant's name is spelled "Collette Kelley" in the original petition but "Colette Kelly" everywhere else in the record.

is 45 mph, but Lt. Kelly was doing, at one point, 76. Seeing that her light was red, she slowed as she approached Stratmore and saw the Jeep cross Youree. Thinking her way was clear, she drove into the intersection; however, Ms. Criswell had entered and gone halfway through. Lt. Kelly struck the front passenger side of the Kia at 37 mph.

Both officers' units were equipped with dashcams that captured video and audio of the collision. These recordings were introduced in evidence, played multiple times at trial, and subjected to intense commentary by SPD officers.

Lt. Kelly was carried by EMS to Willis-Knighton Pierremont, where doctors described the force of impact as "moderate"; she was sent home with prescriptions for Ibuprofen, Norco (a mild narcotic, which she said she did not take because it would impair her work), and cyclobenzaprine (a mild muscle relaxant, which also she did not take), and told to come to Work Kare the next day. However, doctors also approved her to return to work the next day. She made two trips to Work Kare – November 21 and 28 – where doctors noted headache, concussion without loss of consciousness, and pain and stiffness in the back and neck. Finding no serious problems, they told her to keep taking the mild pain relievers and to return to work.

Ms. Criswell filed this suit against Lt. Kelly, the City of Shreveport Police Department, and its insurer in February 2018; she soon dismissed the insurer. Lt. Kelly filed this reconventional demand against Ms. Criswell and her father in May 2018. On the first day of trial, in March 2020, counsel announced that Ms. Criswell had settled with the City, so only Lt. Kelly's reconvention proceeded.

## TRIAL EVIDENCE

The trial took three days, much of the time devoted to details of internal SPD practices, who drafted and edited the original crash report, and how various officers disagreed about interpreting the accident. The relevant evidence is summarized below.

Lt. Kelly's primary witness was SPD Sgt. Michael Carter, who felt both drivers were at fault, but he dwelt mostly on how well Lt. Kelly handled the situation. He testified that she acted reasonably in slowing her vehicle from 76 to 36, in turning on her dash-mounted lights 26 seconds before impact, and in starting her siren 7 seconds before. Also, he felt there was nothing to obstruct Ms. Criswell's view of two speeding cop cars, with lights flashing and sirens blaring, coming down Youree.

Lt. Kelly also called Lashaun Aldridge, another driver who (like Ms. Criswell) was headed west on Stratmore, but in the right lane, waiting at the light before the collision occurred. She testified that she heard the sirens and saw the flashing lights, so she stayed put when the light turned green. She agreed that her car was between Ms. Criswell's and the oncoming cop cars, but she did not think this obstructed Ms. Criswell's view up Youree.

Ofc. Turner, the SPD officer who was following Lt. Kelly, also felt that there was nothing to obstruct Ms. Criswell's view.

Lt. Kelly also called SPD Cpl. Dirk Morris, who earned his crash investigation certification after this accident. He admitted making numerous changes to the crash report (as noted, much time was given to the evolution of the reports and diagrams as they wended their way through SPD). He described the statutory authority for emergency vehicles to run red lights, La. R.S. 32:24, and SPD's internal rule governing this, Gen. Ord. § 606.04.

3

He concluded that Lt. Kelly did not make sure the way was clear before running the red light, and was therefore at fault for ignoring traffic controls, while Ms. Criswell committed no traffic violation. He agreed that there were no light poles, buildings, or vegetation to obstruct Ms. Criswell's view up Youree, but the two vehicles in the right lane would have done so.

Lt. Kelly testified that as she neared Stratmore, she knew her light was red but she thought "the cars on the side street would stay there." Because of this, she felt she had "cleared" the intersection, meaning it was okay for her to run the red light. She considered this a major accident, as it left her woozy, disoriented, and with lots of pain and a "blinding headache." Even though Willis-Knighton released her to work, she said there was "no way" she could do so. She wound up staying off work for 29 or 30 days, using vacation and comp time, and said she felt pain, stress, and anxiety for about six months. She also testified that she had to miss a few special assignments that would have paid $33-45 an hour; however, evidence of her pay rate was excluded for being tendered long after the deadline specified in the pretrial scheduling order.

Ms. Criswell's lead witness was Cpl. Shane Prothro. He had watched the dashcam video and overruled Sgt. Carter's initial move to ticket Ms. Criswell. Cpl. Prothro downloaded and analyzed the data from Lt. Kelly's airbag module control, finding that 2 seconds before impact, she had slowed to 35 mph, but then she actually *accelerated*, resulting in an impact velocity of 37. With the dashcam clearly showing vehicles crossing Youree, he found that Lt. Kelly's decision to run the red light violated § 606.04. He also testified that dash-mounted lights are not as easy to see, from the side, as

top-mounted ones, and added that Ms. Criswell was facing into the sun on a bright, clear afternoon.

Ms. Criswell testified that when the light turned green, she had no reason to wait; she heard no siren and saw no flashing lights. Also, she followed Ms. Jacobs right into the intersection, doing nothing to suggest that she would yield to crossing traffic.

## ACTION OF THE DISTRICT COURT

The district court wrote an eight-page opinion. After laying out the basic facts, it quoted R.S. 32:24, which permits an emergency vehicle "responding to an emergency call" to "proceed past a red or stop signal * * * but only after slowing down or stopping as may be necessary for safe operation." If an emergency driver complies with this, then she is liable only for "reckless disregard for the safety of others"; but if she does not so comply, then she is liable for any breach of "due care." *Rabalais v. Nash*, 06-0999 (La. 3/9/07), 952 So. 2d 653; *Lenard v. Dilley*, 01-1522 (La. 1/15/02), 805 So. 2d 175. The court accepted Cpl. Prothro's view that Lt. Kelly's internal flashing lights were not readily visible to Ms. Criswell, and found that Lt. Kelly did not start her siren until "approximately two seconds" before impact; thus, she did not sufficiently warn motorists, so the "due care" standard applied.

The court then quoted Gen. Ord. § 606.04, which requires an officer, "prior to entering the intersection, [to] come to a complete stop and control the vehicle so as to avoid a collision with another vehicle or pedestrian." Next, the court considered the motorist's duty, under La. R.S. 32:125, with respect to an "emergency vehicle making use of audible or visual signals," to "yield the right-of-way." There is no duty to yield when such signals are not

5

being used. *Neloms v. Empire Fire & Marine Ins. Co.*, 37,786 (La. App. 2 Cir. 10/16/03), 859 So. 2d 225; *Pope v. Prunty*, 37,395 (La. App. 2 Cir. 8/20/03), 852 So. 2d 1213, *writ denied*, 03-2496 (La. 11/26/03), 860 So. 2d 1137.

The court found that Lt. Kelly slowed her unit from nearly 80 to "approximately 33" before entering the intersection, but never stopped, and she activated her siren only two seconds before impact. Considering both parties' conduct, the court assigned fault 50% each.

As to quantum, the court noted that Lt. Kelly never filled her prescriptions, went to Willis-Knighton only three times, and each time was released to return to work. The court awarded general damages of $10,000, citing *Harper v. State Farm*, 50,728 (La. App. 2 Cir. 6/22/16), 198 So. 3d 168. Finally, the court found "insufficient evidence" to support any judgment for lost income.

The court later rendered judgment in favor of Lt. Kelly for $5,000 and, after a hearing in November 2020, denied her motion for new trial. Lt. Kelly appealed, raising six assignments; Ms. Criswell answered the appeal.

**DISCUSSION: MANIFEST ERROR CLAIMS**

By her first assignment of error, Lt. Kelley urges the district court erred in four critical findings: (1) that she activated her siren only 2 seconds before impact; (2) that her emergency lights were not very visible to Ms. Criswell; (3) that Ofc. Turner's vehicle did not enhance the view of her own; and (4) that Ms. Criswell's view up Youree Dr. was obstructed. Lt. Kelly concedes that manifest error applies, but cites Sgt. Carter's testimony that the siren started 7 seconds before impact, and her own testimony of "toggling" the siren for 7 seconds followed by a "high-piercing sound" for 8

6

seconds, for a total of 15 seconds of siren. Beyond this, she merely disputes Cpl. Prothro's view that dash-mounted lights are not very visible to an observer on the side of the police unit, as well as the other findings that she considers plainly wrong.

The district court's findings of fact are subject to the manifest error standard of review: the court of appeal may not set these aside unless they are manifestly erroneous or plainly wrong. *Broussard v. State*, 12-1238 (La. 4/5/13), 113 So. 3d 175; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). The appellate court must decide only whether the factfinder's conclusion was reasonable, not whether it was right or wrong. *Broussard v. State*, *supra*; *Rosell v. ESCO*, *supra*; *Smith v. City of Monroe*, 52,605 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1218. Reversal is warranted only when the record, viewed in its entirety, (1) contains no reasonable factual basis for the district court's finding and (2) establishes that the finding is clearly wrong. *Broussard v. State*, *supra*; *Rosell v. ESCO*, *supra*; *Smith v. City of Monroe*, *supra*. Without such a showing, the appellate court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Bellard v. American Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So. 2d 654; *Smith v. City of Monroe*, *supra*.

At trial, Lt. Kelly's counsel did a commendable job of examining the witnesses and exposing the small discrepancies in their accounts of the accident and investigation (notably, the crash report). If the recollections of these witnesses were the only evidence available, then Lt. Kelly might well cast a faint penumbra on the court's findings. However, this record includes the solid documentary evidence of Lt. Kelly's dashcam video, which the district court watched and this court has viewed several times. The audio

7

plays no siren until an instant before the crash, and provides absolutely no basis to disturb the district court's finding. The video also shows that as Ms. Criswell waited at the light on Stratmore, there were two vehicles in the right lane that may well have obstructed her view, from the driver's seat of the Kia Optima, north up Youree Dr. The district court's finding of an obstruction is not plainly wrong. Finally, the court's findings as to the visibility of dash-mounted lights and the cumulative effect of Ofc. Turner's siren and lights some distance behind Lt. Kelly are not clearly wrong under the standard of review; however, the court obviously did not totally discount these facts, as it applied comparative fault to Ms. Criswell. This assignment of error lacks merit.

## STATUTORY IMMUNITY

By her third assignment of error, Lt. Kelly urges the district court erred in its application of La. R.S. 32:24, the emergency vehicle statute, and 32:125, procedure on approach of emergency vehicle statute. She submits that this is a legal error warranting de novo review, *Collins v. Creighton*, 53,522 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1114. She disputes the court's finding as to R.S. 32:24 and contends she is entitled to the immunity it provides: she should be liable only for "reckless disregard" or gross negligence. She also argues that this court has consistently applied the reckless disregard standard, and imposed on other motorists a duty to yield, *Slone v. Greber*, 43,471 (La. App. 2 Cir. 8/13/03), 989 So. 2d 273; *Griffin v. City of Monroe*, 46,229 (La. App. 2 Cir. 4/13/11), 61 So. 3d 846.

Ms. Criswell counters that the court was correct to apply the "due care" standard, given Lt. Kelly's failure to comply with R.S. 32:24. She also submits that she was under no duty to look left or right before entering an

8

intersection under a green light, *Cascio v. City of Monroe*, 530 So. 2d 1170 (La. App. 2 Cir. 1988).

The standard of care required of an emergency driver is set out in R.S. 32:24, which provides in pertinent part:

> A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, * * * may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

> B. The driver or rider of an authorized emergency vehicle may do any of the following:

> * * *

> (2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.

> (3) Exceed the maximum speed limits so long as he does not endanger life or property.

> * * *

> C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle * * * is making use of audible or visual signals, * * * sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

> D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others.

The purpose of the statute is to provide immunity to drivers of emergency vehicles, under certain circumstances. *Rabalais v. Nash*, *supra*. A police cruiser is an emergency vehicle. *Fontenot v. Patterson Ins. Co.*, 09-069 (La. 10/20/09), 23 So. 3d 259. If the driver of an emergency vehicle meets the requirements of R.S. 32:24, he or she is liable only for those actions which constitute reckless disregard for the safety of others, *i.e.*, gross

9

negligence. *Rabalais v. Nash*, *supra*; *Neloms v. Empire Fire & Marine Ins. Co.*, *supra*. However, if the emergency vehicle driver's conduct does not meet those requirements, then his or her actions are gauged by an ordinary standard of due care. *Rabalais v. Nash*, *supra*; *Lenard v. Dilley*, *supra*; *Pope v. Prunty*, *supra*.

Moreover, as an SPD officer, Lt. Kelly was expected to comply with Gen. Ord. § 606.04, which provides in pertinent part:

> Upon approaching an intersection controlled by traffic signals or signs requiring the operator of an emergency vehicle to stop (red light or stop sign), * * * the operator of any emergency vehicle participating in the emergency pursuit response shall, prior to entering the intersection, come to a complete stop and control the vehicle so as to avoid a collision with another vehicle or pedestrian. The operator of the vehicle shall then observe the entire area/intersection and ensure that the way is clear and all vehicles operating in the area/intersection have stopped and/or yielded to the operator's vehicle before cautiously proceeding through the intersection.
>
> * * *
>
> Emergency response speed shall be determined by the nature of the call and most importantly by such things as weather, road, and existing traffic conditions. Officers will proceed with haste, using emergency warning equipment constantly. Speed may exceed the posted limit, with a maximum speed not over 20 miles over the posted limit, so long as it is reasonable for the existing conditions.
>
> * * *
>
> Audible signals shall be sounded well in advance of entering an intersection. Officers shall stop prior to entering any intersection against a red traffic signal or stop sign.

Finally, the duty of an emergency driver is implicated in a statute that sets out the duty of motorists who might encounter an emergency vehicle on the road. La. R.S. 32:125 provides in pertinent part:

> A. Upon the immediate approach of * * * a police vehicle properly and lawfully making use of an audible signal only, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway

10

clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

* * *

C. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.

The motorist's duty to yield the right-of-way to an emergency vehicle does not arise unless she saw or heard, or under the circumstances should have seen or heard, the audible and/or visual warnings of that vehicle. *Amos v. Walker*, 45,679 (La. App. 2 Cir. 11/3/10), 55 So. 3d 129, *writ denied*, 10-2664 (La. 1/28/11), 56 So. 3d 960; *Slone v. Greber*, *supra*.

Significantly, the district court accepted Cpl. Prothro's assessment that Lt. Kelly's dash-mounted flashing lights were readily visible only to vehicles in front and behind, not to the side, and would not show up well on bright sunny days. The court also found that Lt. Kelly did not activate her siren until 2 seconds before impact, and that Ofc. Turner was far enough behind her that his siren did not suffice to warn Ms. Criswell. With these findings, the court was justified in ruling that Lt. Kelly did not give signals "sufficient to warn motorists," R.S. 32:24 C, did not use an audible signal "well in advance," Gen. Ord. § 606.04, and did not exercise "due regard for the safety of all other persons using the highway," R.S. 32:125 C. The court committed no legal error in denying Lt. Kelly the immunity of R.S. 32:24 or in subjecting her conduct to the standard of due care. This assignment of error lacks merit.

## COMPARATIVE FAULT

By her fifth assignment of error, Lt. Kelly urges the district court erred in applying comparative fault. She cites the standard of comparing

11

fault, *Watson v. State Farm*, 469 So. 2d 967 (La. 1985), and argues that between the fact that she did not recklessly disregard anyone's safety, and that Ms. Criswell breached her "high duty to yield right of way," this court should reassign fault 100% to Ms. Criswell and 0% to Lt. Kelly.

By answer to appeal, Ms. Criswell also urges the district court erred in assigning her 50% fault. She argues the court was correct to apply the "due care" standard to Lt. Kelly and find a breach thereof. However, Ms. Criswell argues that she was not required to look left or right before entering an intersection under a green light, *Cascio v. City of Monroe*, *supra*, and submits that comparing her protected conduct with Lt. Kelly's serious breaches of due care would warrant assigning fault 100% to Lt. Kelly and 0% to Ms. Criswell.

Louisiana applies a comparative fault system, based on the "degree or percentage of fault of all persons causing or contributing to the injury[.]" La. C.C. art. 2323 A. In assessing comparative fault, the courts typically consider (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was being sought by the conduct, (4) the capacities of the parties, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. *Watson v. State Farm*, *supra*; *Malta v. Herbert S. Hiller Corp.*, 21-00209 (La. 10/10/21), __ So. 3d __. The trial court's allocation of fault is a factual determination. *Duncan v. Kansas City S. Ry. Co.*, 00-0066 (La. 10/30/00), 773 So. 2d 670; *Malta v. Herbert S. Hiller Corp.*, *supra*. As such, it is subject to manifest error review. *Id*. The allocation of fault is not an exact science or search for one precise ratio, but rather the search for an

12

acceptable range; an allocation by the factfinder within that range cannot be clearly wrong. *Malta v. Herbert S. Hiller Corp.*, *supra*, and citations therein.

As noted above, Lt. Kelly was using excessive speed, failed to stop at the intersection, and waited until the last moment to deploy her siren. All of this was contrary to statutes and SPD orders, and posed a great risk to the motoring public. No reasonable factfinder would declare her free of fault. However, it is important that she was responding to an "active shooter" call at an elementary school (albeit during a holiday week), which imparts social significance to her conduct.

The record also shows that Ms. Criswell was under no extenuating circumstances requiring her to hurry through the intersection. Also, at least one other driver waiting at the light (Ms. Aldridge) heard the sirens and saw the flashing lights, and waited; with more situational awareness, Ms. Criswell could have noticed something, too. We cannot ignore the wide-open vista available to her on Stratmore at Youree, quite unlike the close and congested intersection of Louisville Ave. and North 6th St. in Monroe, where the defendant in *Cascio* ran a red light en route to a fire.

Although Ms. Criswell's level of fault strikes us as considerably less than Lt. Kelly's, we recognize the importance of Lt. Kelly's response to a crime scene, and cannot say that the allocation of 50-50 fault was an abuse of the district court's discretion. These assignments of error lack merit.

**QUANTUM**

By her fourth assignment of error, Lt. Kelly urges the district court abused its discretion in awarding abusively low general damages. She concedes the court's vast discretion, La. C.C. art. 2324.1, *Wainwright v. Fontenot*, 00-0492 (La. 10/17/00), 774 So. 2d 70, but argues that her own

testimony, the medical reports, and her "perfect attendance records" at SPD conclusively show that her injury was worth much more than $10,000. She cites the violent nature of the impact; the "medically verified injuries" (her list of self-reported complaints at Willis-Knighton); the "type and extent of her injuries" (self-reported complaints at Work Kare); her own testimony regarding her inability to work; and her attendance records, showing that she is not a shirker. She submits that the lowest reasonable award would be $24,000.

By her third assignment of error, Ms. Criswell urges that the award is abusively high. She contends that the documented complaints and treatment support a soft-tissue injury that lasted about eight days, and argues that soft-tissue injuries average about $1,000 a month. *Signal v. Anderson*, 42,646 (La. App. 2 Cir. 12/19/07), 973 So. 2d 933; *Corder v. Lively*, 39,780 (La. App. 2 Cir. 6/29/05), 907 So. 2d 824; *Andrus v. Sanchez*, 04-1063 (La. App. 5 Cir. 2/15/05), 898 So. 2d 512; *Montrell v. State Farm*, 06-0054 (La. App. 4 Cir. 11/21/06), 946 So. 2d 230, *writ denied*, 06-2997 (La. 2/16/07), 949 So. 2d 414; *Antley v. Rodgers*, 52,168 (La. App. 2 Cir. 6/27/18), 251 So. 3d 607. She suggests that Lt. Kelly's award should be reduced to $500-$1,000.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315 A. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. *Wegener v. Lafayette Ins. Co.*, 10-0810 (La. 3/15/11), 60 So. 3d 1220; *Shephard v. AIX Energy Inc.*, 51,965 (La. App. 2 Cir. 5/23/18), 249 So. 3d 194, *writ*

14

*denied*, 18-1266 (La. 11/5/18), 255 So. 3d 1050. In the assessment of such damages, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Hae Woo Youn v. Maritime Overseas Corp.*, 623 So. 2d 1257 (La. 1993), *cert. denied*, 510 U.S. 1114, 114 S. Ct. 1059, 127 L. Ed. 2d 379 (1994); *Shephard v. AIX Energy*, *supra*. The role of the appellate court in reviewing general damages is not to decide what it considers an appropriate award, but to review the exercise of discretion by the trier of fact. *Id.*

At first glance, this award gave us pause; the plaintiff in *Harper*, on which the district court relied in fixing quantum of $10,000, sustained a hand injury that kept him off work for 2½ months, saw a doctor for four months, and required an emergency room visit for back pain related to the collision some 11 months post-accident. By contrast, Lt. Kelly sought medical treatment only three times – at Willis-Knighton, the day of the accident, and at Work Kare, two days and eight days post-accident – and on all three occasions was released to return to work with no restrictions. Moreover, her testimony was less than persuasive: she said she refused to take the mild narcotic and muscle relaxant dispensed at Willis-Knighton because it would impair her work, but also that she stayed off work for nearly a month; in that event, what work would the meds have impaired?

However, we extend great deference to the district court's vast discretion. The dashcam video from both Lt. Kelly's and Ofc. Turner's cars showed a forceful, jarring impact at fairly high speed, perhaps more than the jolt described in *Harper*. And the district court, in its superior position to assess Lt. Kelly's demeanor and sincerity, was entitled to find that her pain

15

and trauma lasted longer than the sparse medical records would show. In short, this award strains the upper limits for a soft-tissue injury requiring three medical visits and no restriction from work, but on the entire record we will not declare it an abuse of the court's discretion. These assignments of error lack merit.

## SPECIAL DAMAGES

By her sixth assignment of error, Lt. Kelly urges the district court erred in denying special damages. She concedes that she offered no evidence of lost income, but insists she was not seeking this but rather reimbursement for the use of her vacation and compensatory time. She suggests that this could be easily calculated by multiplying hourly pay by the number of leave hours, or $1,612.80. By reply brief, she also concedes that she did not comply with the district court's scheduling order, failing to provide this documentation to opposing counsel until the day of trial. She contends, however, "Fairness to citizen parties should always 'trump' certain trivial skirmishing technicalities between lawyers."

Ms. Criswell responds that Lt. Kelly offered no proof at all of her special damages, and that the denial of this claim should be affirmed, *Smith v. Escalon*, 48,129 (La. App. 2 Cir. 6/26/13), 117 So. 3d 576.

Special damages are those which have a "ready market value," such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages. *Baack v. McIntosh*, 20-01054 (La. 6/30/21), __ So. 3d __; *Smith v. Escalon*, *supra*. A plaintiff is required to prove special damages by a preponderance of the evidence, and the district court's findings in this respect are subject to manifest error

16

review. *Enriquez v. Safeway Ins. Co. of La.*, 52,425 (La. App. 2 Cir. 1/16/19), 264 So. 3d 648; *Smith v. Escalon*, *supra*.

Lt. Kelly concedes, and a review of the record confirms, that she offered no evidence of her rate of pay. Without this, the district court's denial of special damages is not manifestly erroneous. *Smith v. Escalon*, *supra*, and citations therein.

The court is authorized to direct the attorneys to appear before it for conferences to ensure the orderly disposition of the case. La. C.C.P. art. 1551 A. Afterward, the court shall render an order which "controls the subsequent course of the action[.]" La. C.C.P. art. 1551 B; *Robinson v. Apria Healthcare Inc.*, 38,438 (La. App. 2 Cir. 5/27/04), 874 So. 2d 418; *Perniciaro v. Hamed*, 20-62 (La. App. 5 Cir. 12/16/20), 309 So. 3d 813. Failure to comply with the pretrial order may result in sanctions, such as the exclusion of evidence not timely provided to the court and opposing counsel. *Allen v. Bridges*, 41,169 (La. App. 2 Cir. 11/1/06), 942 So. 2d 686; *Perniciaro v. Hamed*, *supra*.

The scheduling order stated, "Pretrial inserts, including * * * numbered exhibits are due in writing to all counsel of record no later than sixty (60) days before trial." Counsel did not produce Lt. Kelly's wage information, Exhibit 14, until the day of trial. Ms. Criswell's counsel objected, and the district court excluded the exhibit. Considering that nearly two years had elapsed from the scheduling order until trial, we perceive no abuse of discretion. This assignment of error lacks merit.

**MOTION FOR NEW TRIAL**

By her second assignment of error, Lt. Kelly urges the district court erred in denying her motion for new trial. She cites no law, but argues that

17

the errors asserted in the other assignments, combined, should warrant a new trial.

A new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and the evidence. La. C.C.P. art. 1972 (1). A new trial may be granted if there is good ground therefor. La. C.C.P. art. 1973. The standard of review of a ruling on the motion to new trial is abuse of discretion. *Pitts v. La. Med. Mut. Ins. Co.*, 16-1232 (La. 3/15/17), 218 So. 3d 58.

Because we have determined that none of the assigned errors has merit, we find no abuse of the district court's discretion in denying a new trial. This assignment lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellant, Lt. Colette Kelly.

**AFFIRMED**.

18