GUIDRY, J.
Ip,A healthcare worker appeals a summary judgment dismissing her suit against an ambulance driver, his employer, and their insurer for injuries she allegedly sustained while accompanying a patient in the ambulance. Finding summary judgment was properly granted, we affirm.
FACTS AND PROCEDURAL HISTORY
On January 20, 2010, the plaintiff, Dwan Jones, accompanied a patient who was being transported from Southeast Hospital to Lakeview Hospital in Mandeville, Louisiana, in an ambulance owned by the St. Tammany Parish Fire Protection District # 4 and operated by Christopher J. Simpson, an employee of the St. Tammany Parish Fire Protection District #4. Ms. Jones was employed by Southeast Hospital. Ms. Jones rode as a front seat passenger in the ambulance, and two paramedics rode in the back of the ambulance with the patient.
The ambulance traveled northbound on U.S. 190 East Service Road to Lakeview Hospital. As the ambulance approached the intersection of Fairway Drive and the U.S. 190 E. Service Road, the light controlling the ambulance’s direction of travel was red. The ambulance stopped, then proceeded through the intersection, when it was struck by a 1999 Mercury Marquis taxi cab driven by Sim Coley and owned by Parish Cab, Inc.
As a result of the collision, Ms. Jones filed a petition for damages on January 13, 2011, against Mr. Simpson, St. Tammany Parish Fire Protection District # 4, and their insurer, American Alternative Insurance Corporation (collectively “defendants”).[1] The defendants answered Ms. Jones’ petition, denying any liability for her alleged injuries, and later filed a motion for summary judgment seeking dismissal of the suit, or in the alternative, a partial summary | judgment declaring that the reckless disregard standard of La. R.S. 32:24 applied to Ms. Jones’ claims. The trial court denied the motion for summary judgment and the alternative motion for partial summary judgment, and writs of review were denied by this court and the Louisiana Supreme Court. See Jones v. Simpson, 12-0690 (La.App. 1st Cir.7/30/12) (unpublished writ action), writ denied, 12-1952 (La.11/9/12), 100 So.3d 844.
Thereafter, the parties continued to conduct discovery and the matter was set for *389 a jury trial; however, prior to trial, the defendants re-urged their motion for summary judgment and alternative motion for partial summary judgment, having supplemented their original submission with Mr. Coley’s deposition. Following a hearing on the re-urged motion, the trial court granted summary judgment in favor of the defendants, dismissing the plaintiffs claims with prejudice.
ASSIGNMENTS OF ERROR
On appeal, the plaintiff raises three assignments as grounds for finding the trial court erred in granting summary judgment in this matter. In the first two assignments of error, the plaintiff alleges that the trial court improperly weighed the evidence submitted by the parties to find that the reckless disregard standard of La. R.S. 32:24 applied to assess liability in this matter. In her third assignment of error, the plaintiff alleges that the trial court further erred in holding that she could not prove gross negligence (reckless disregard).
APPLICABLE LAW
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall Sugar Cooperative, Inc., 01-2956, p. 3 (La.App. 1st Cir.12/30/02), 836 So.2d 484, 486. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, | ¿admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. George S. May International Company v. Arrowpoint Capital Corporation, 11-1865, p. 4 (La.App. 1st Cir.8/10/12), 97 So.3d 1167, 1170.
The mover bears the burden of proving that he is entitled to summary judgment. La. C.C.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent’s claim, action, or defense. See La. C.C.P. art. 966(C)(2). If the non-moving party fails to produce factual support sufficient to establish it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Whether a particular fact in dispute is “material” for summary judgment purposes is viewed in light of the substantive law applicable to the case. MB Industries, LLC v. CNA Insurance Company, 11-0303, p. 15 (La.10/25/11), 74 So.3d 1173, 1183.
The substantive law at issue in this matter is the Louisiana Emergency Vehicle Statute, La. R.S. 32:24, which provides:
A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
[[Image here]]
(2) Proceed past a red or stop signal or stop sign, but only after | ^slowing down or stopping as may be necessary for safe operation;
*390 [[Image here]]
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others. [Emphasis added.]
The Louisiana Supreme Court, in Lenard v. Dilley, 01-1522 (La.1/15/02), 805 So.2d 175, has held that the statute sets forth two standards of care, depending upon the circumstances. If an emergency vehicle driver meets the requirements of Sections A, B, and C, then the driver can be held liable only if his actions rise to the level of “reckless disregard” for the safety of others. On the other hand, if the driver’s actions do not meet the prerequisites of Sections A, B, and C, then the driver’s actions are to be assessed under the “due regard” or an ordinary negligence standard. Lenard, 01-1522 at pp. 3-4, 805 So.2d at 178. In discussing the two standards, the court explained:
“Due care” is synonymous with ordinary negligence. “Reckless disregard,” however, connotes conduct more severe than negligent behavior. “Reckless disregard” is, in effect, “gross negligence.” Gross negligence has been defined by this court as “the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise.” State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). “Reckless disregard” or “gross negligence” is the standard to be applied if the emergency vehicle driver’s actions fit La.Rev.Stat. 32:24(A) through La. Rev.Stat. 32:24(C). Otherwise, the standard is ordinary negligence.
Lenard, 01-1522 at pp. 6-7, 805 So.2d at 180.
DISCUSSION
In her first two assignments of error, Ms. Jones asserts that the trial court improperly weighed the evidence submitted to conclude that the defendants’ | (¡liability must be assessed under the reckless disregard standard of La. R.S 32:24. In support of this assertion, Ms. Jones principally argues that conflicting evidence was submitted regarding whether the ambulance’s siren was engaged and whether an emergency existed at the time of the accident.
It is undisputed that a visual signal (the ambulance’s emergency lights) were engaged prior to and at the time of the accident. Still, Ms. Jones asserts that conflicting evidence was presented regarding whether an audible signal was being used at the time of the accident. Careful consideration of the deposition testimony of Ms. Jones and Mr. Simpson, however, reveals that their testimony regarding the use of an audible signal does not conflict.
Ms. Jones testified that five to ten minutes prior to reaching the intersection where the accident occurred, Mr. Simpson turned on both the lights and siren for the ambulance; however, prior to entering the intersection, she stated that Mr. Simpson turned off the siren. On reaching the intersection where the accident occurred, Ms. Jones explained, “[h]e paused. And when he paused, the siren wasn’t on. The light was flashing, but the siren wasn’t on. And when he started to proceed, he turned them on and proceeded across.” Since *391 Ms. Jones had previously testified that the siren had been on for ten minutes prior to the ambulance reaching the intersection, the following discussion ensued to further clarify her testimony:
Q. Was it — a few minutes ago you told me that the sirens had been on for about ten minutes?
A. Had been on for ten minutes. When he got to the stop — by the red light, he had turned them off.
Q. Okay.
A. When he started to proceed, he started pressing on this little thing to make — so he could go across.
Q. He started pressing on a button to make the siren come back on?
A. Right.
Q. And when he did that, was it a constant sound, or did it make beeps and buzzers [sic] and noises?
|7A. Yeah, buzzes and noises.
Q. And he did that before he went into the intersection?
A. As he started to proceed [into] the intersection.
[[Image here]]
Q. But you’re telling me at the time he entered the intersection, that the siren was off.
Was it off or was it just buzzing and beeping, not a constant sound?
A. No, it was off.
Q. So at some point, what you’re telling me — •
A. When he got close to the red light, he had turned them off. And—
Q. Okay.
A. — he slowed down at the red light.
Q. All right.
A. And when he started to proceed, he started pressing a button to make them go — make that noise, a beep, beep noise and he — to go across.
[Bold typeface in original text.]
Similarly, Mr. Simpson testified:
Okay. I came to the intersection with lights and sirens. And I was changing cadence of the lights and sirens because they tell us that people are tone deaf after certain things. So it’s normal practice to change, and hit your horn at the intersection.
So I came to the intersection, changing my cadence to sirens. Stopped at the red light. Observed all four directions, and with — and observed a car.
It appeared to me that it was coming to a stop. And I continued through the intersection. And he continued through the intersection.
I came to a stop again. Then he struck the ambulance.
Thus, as shown in the parties’ own deposition testimony, while the type or manner of audible signal used by Mr. Simpson may have changed from when he approached the intersection to when he entered the intersection, the testimony of both parties reveals that some type of audible signal was used as the ambulance both approached and entered the intersection. Nevertheless, as held by our courts, mere use of a signal or signals is not enough to show compliance with La. R.S. 32:24(C); there must be a further showing that use of the signal or signals was “sufficient to warn motorists” of the approach of the emergency vehicle. See Slone v. Greber, 43,471, p. 7 (La.App.2d Cir.8/13/08), 989 So.2d 273, 278; see also Guitreau v. City of Gonzales, 12-0794 (La.App. 1st Cir.2/13/13), 2013 WL 557018, at *3 (an unpublished opinion in which this court found that the visual and audible warnings given by an officer were insufficient to warn the plaintiff in that case); Spears v. City of Scott, 05-230, pp. 8-9 (La.App. 3d Cir.11/2/05), 915 So.2d 983, 991, writ de *392 nied, 05-2478 (La.3/31/06), 925 So.2d 1259 (where although the evidence demonstrated the officer had engaged both the lights and siren on his vehicle, the court nevertheless affirmed the finding that the siren used was insufficient to warn the plaintiff or other motorists).
To this end, Ms. Jones further testified that Mr. Coley “didn’t have a chance to stop.” As she explained: “When [Mr. Simpson] got ready to proceed across— ... — he started beeping on this little horn.... And he looked. When he went to proceed across, it happened so fast. When he went across, it just (gesturing) ... And it was too late. He couldn’t avoid it. And the cab driver couldn’t avoid it.... it happened quickly.” In her affidavit, which Ms. Jones submitted in opposition to the second motion for summary judgment, she stated that Mr. Simpson “did not timely blow the horn or sound any siren until it was too late to avoid a collision.” However, Ms. Jones and Mr. Coley both affirmatively testified that other motorists present at the intersection yielded to the ambulance.
At the summary judgment stage, the judge’s function is not to weigh the evidence and determine the truth of the matter, but it is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Row v. Pierremont Plaza, L.L.C., 35,796, p. 13 (La.App.2d Cir.4/3/02), 814 So.2d 124, 130-31, writ denied, 02-1262 (La.8/30/02), 823 So.2d 952. The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge’s inquiry, therefore-, unavoidably asks whether reasonable | ¡jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. Row, 35,796 at p. 14, 814 So.2d at 131.
In Slone, 43,471 at p. 8, 989 So.2d at 279, the court observed that La. R.S. 32:24(C) does not require that both audible and visual signals be given. Considering that it is undisputed in this case that a visual signal was used, and that no matter what his actions, the signals used by Mr. Simpson were sufficient to warn other motorists stopped at the intersection, we find no error in the trial court’s determination that Mr. Simpson complied with Section C of the statute.
As for the existence of an emergency, in her affidavit, Ms. Jones stated “the emergency situation no longer existed” at the time the accident occurred. She acknowledged that the patient being transported had, at one time, passed out, but at the time the ambulance entered the intersection, “the patient’s condition was stable.” Mr. Simpson, however, testified to the contrary in his deposition. As he explained, when he picked up the patient at Southeast, he initially did not use the lights or sirens because they were traveling in a “pretty rural area.” But then the patient “became very combative in the back of the truck,” so he said one of the paramedics present in the back of the ambulance with the patient requested that he “go Code 3.” Mr. Simpson explained that “Code 3” meant “lights and sirens.”
Notably,' Ms. Jones’ deposition testimony corroborates Mr. Simpson’s testimony, in that she stated that the ambulance’s lights and sirens were not turned on when the ambulance left Southeast Hospital. She stated the lights and sirens were turned on “when we got on the service road,” which was about five or ten minutes before the accident occurred. Moreover, in her earlier deposition testimony, Ms. Jones gave the following testimony regard *393 ing whether an emergency existed at the time of the accident:
Q. Do you know why the patient was being transmitted from Southeast to the hospital in Mandeville?
A. She passed out.
Q. Sounds like this was an emergency?
A. Yes.
Q. Do you know why the patient had passed out?
A. From my understanding, her pressure dropped.
[[Image here]]
Q. They were hurrying to get the patient to the hospital; is that correct?
A. True.
Q. Okay. So they would have been hurrying either way?
A. Well, they wasn’t like a death life situation. But they were getting her there so she could be treated because her pressure had dropped.
Q. But it was an emergency situation?
A. Exactly. [Bold typeface in original text.]
Affidavits offered in support or in opposition to a motion for summary judgment shall be made on personal knowledge and shall show affirmatively that the affi-ant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A). Moreover, affidavits that are devoid of specific underlying facts to support a conclusion of ultimate “fact” are not legally sufficient to defeat summary judgment. Mapp Construction, LLC v. Southgate Penthouses, LLC, 09-0850, pp. 23-24 (La.App. 1st Cir.10/23/09), 29 So.3d 548, 563-64, writ denied, 09-2743 (La.2/26/10), 28 So.3d 275. An inconsistent affidavit offered only after a motion for summary judgment is filed is generally held to be insufficient to create a genuine issue of material fact where no justification for the inconsistency is offered. See Hudson v. Progressive Security Insurance Company, 05-2648, p. 3 n. 1 (La.App. 1st Cir.11/3/06), 950 So.2d 817, 819 n. 1.
The only evidence that Mr. Simpson was not responding to an emergency is the statement in Ms. Jones’ affidavit, which contradicts her earlier deposition testimony. She does not provide a factual basis for asserting that “the emergency situation no longer existed” and that “the patient’s condition was stable.” In fact, when asked in her deposition, “was the patient restrained on the stretcher” in the |inback of the ambulance, she responded: “Yes. For how long, I don’t know. I wasn’t back there.” As was previously discussed earlier in this opinion, Ms. Jones rode as a front seat passenger in the ambulance and was not in the back with the patient.
As Ms. Jones provides no factual support for her assertion that an emergency did not exist and that the patient was stable, we find the trial court did not err in concluding that no genuine issue of material fact existed regarding whether Mr. Simpson was responding to an emergency. Consequently, we find no error in the trial court likewise concluding that the reckless disregard standard should apply to assess the liability of the defendants for the accident.
We now reach Ms. Jones’ final assignment of error, the allegation that the trial court erred in finding that she would be unable to prove that Mr. Simpson’s actions rose to the level of gross negligence. We disagree. At the hearing on the second motion for summary judgment, when counsel for Ms. Jones was asked what evidence he had to present to show Mr. Simpson’s actions rose to the level of gross negligence (reckless disregard), he simply responded, “[w]e will put something *394 on.” Counsel indicated that he was relying on the trial court to hold that a determination of whether Mr. Simpson should be granted immunity (i.e., be held to the standard of gross negligence under La. R.S. 32:24) would be an issue for the jury to decide. The trial court acknowledged Ms. Jones’ assertion that Mr. Simpson was “inattentive,” but observed that it did not see inattentiveness as “rising to the level of gross negligence under any scenario.”
Ms. Jones did testify in her deposition that Mr. Simpson was talking or “kidding” with the paramedics in the back of the ambulance, who told him to “hurry up,” because they were hungry, but she acknowledged that she never saw him take his eyes off the road. Based on the foregoing, we find that Ms. Jones |12failed to meet her burden of producing factual support sufficient to establish she will be able to satisfy the evidentiary burden of proof at trial. Thus,’there is no genuine issue of material fact as to Mr. Simpson’s actions constituting gross negligence, and the defendants are entitled to judgment as a matter of law.
CONCLUSION
After reviewing this matter de novo and having found the evidence and law support the rendering of summary judgment, we affirm. All costs of this appeal are cast to the appellant, Dwan Jones.
AFFIRMED.

. Due to a separate settlement with Ms. Jones, Mr. Coley and Parish Cab, Inc. were not parties to this suit.