THERIOT, J.
On January 22, 2018, the Twenty-First Judicial District Court rendered judgment assessing the fault of the defendants, Troy Odem Guitreau, Livingston Parish Fire Protection District No. 9, and American Alternative Insurance Company at 75%, and assessing the fault of the plaintiff, Nunzio Inzinna at 25%. Both parties appeal. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
At approximately noon on January 27, 2013, Nunzio Inzinna was driving a 2007 Honda Accord on Highway 22 near Killian, Louisiana. At the same time, Troy Odem Guitreau, who was responding to an emergency call dispatched by Livingston Parish Fire Protection District Two Volunteer Fire Department Incorporated ("District 2"), was driving a 2007 Ford Crown Victoria on the same highway. Mr. Guitreau was driving at least 60 miles per hour, but may *586 have been driving as fast as 90 miles per hour. As Mr. Guitreau was driving down Highway 22, he approached a pick-up truck, driven by Robert Watkins, which was traveling in the same lane in the same direction. Mr. Watkins was driving behind Mr. Inzinna.
At this point, Mr. Inzinna activated his left blinker to attempt a left turn into a driveway. As Mr. Inzinna was preparing to turn, Mr. Guitreau (who was behind Mr. Watkins), accelerated to pass Mr. Watkins. Mr. Guitreau then went around the left side of Mr. Watkins' truck. Mr. Inzinna, who did not see Mr. Guitreau attempting to pass Mr. Watkins, began his left turn into the driveway. When Mr. Guitreau saw Mr. Inzinna making the left turn, Mr. Guitreau slammed on his brakes and steered towards the ditch on the left side of the road. However, Mr. Guitreau was unable to avoid a collision and crashed into Mr. Inzinna's vehicle.
The vehicle driven by Mr. Guitreau was owned by Livingston Parish Fire Protection District No. 9 ("District 9") and was equipped with sirens and lights, which had separate switches and operated independently of one another. While Mr. Guitreau contends that he had activated both his sirens and lights prior to the accident, Mr. Watkins testified that Mr. Guitreau's vehicle had its lights flashing, but that he heard no siren. Mr. Inzinna alleged that he did not hear a siren, nor did he see any emergency lights.
Mr. Inzinna, his wife Emily Inzinna, Mr. Guitreau, and Mr. Watkins provided testimony about the accident. Mr. Inzinna testified that, upon realizing that he had left his cell phone at home, he activated his left-blinker so that he could turn around in a driveway on the left side of the highway. Before turning, he looked in the rearview mirror and saw that a truck was behind him and that the truck also had its blinker activated. Mr. Inzinna testified that he looked to his rear once more prior to turning left. When he attempted the left turn, he was "hit broadside" by Mr. Guitreau's vehicle. Mr. Inzinna testified that he had not seen Mr. Guitreau's vehicle coming, nor had he seen any emergency lights. He further testified that he did not hear any sirens prior to or after the accident. Regarding Highway 22 itself, Mr. Inzinna testified that there had been a "No Passing" sign on the road and that the posted speed limit on Highway 22 is 55 miles per hour.
Mr. Inzinna did not immediately go to the hospital after the accident, but went the next day. As a result of the accident, Mr. Inzinna suffered injuries to his knee, lower back, neck, and wrist. Mr. Inzinna also admitted to having previous injuries from a fall and a different car accident - both of which occurred several years prior - but testified that those injuries had been resolved prior to the accident with Mr. Guitreau.
Mr. Guitreau testified in a deposition and at trial. In his deposition, he testified that, at the time of the accident, he was working as a volunteer for both District 2 and District 9. Mr. Guitreau testified that he was responding to an emergency call involving an 18-month-child in Killian, Louisiana who was not breathing. Mr. Guitreau was driving a vehicle owned by District 9, but responding to a dispatch from District 2.[1]
He further stated that when the fire department gets an emergency call, the firefighters/first responders are required *587 to turn on their lights and sirens. Mr. Guitreau claimed that he turned on both his sirens and his lights on his way to answer the emergency call. Mr. Guitreau testified that the speed limit on Highway 22 was 55 miles per hour, but that he was driving approximately 65 to 70 miles per hour when responding to the call. There was a no-passing area on Highway 22, but Mr. Guitreau believed he could ignore the no-passing line when responding to an emergency.
Mr. Guitreau alleged that he was driving approximately 65 miles per hour when he saw a pickup truck "[m]aybe 50, 60 feet in front of" him that was going around a curve. He did not see any other vehicle at that time, other than the pickup truck driven by Mr. Watkins. He then accelerated to pass the pickup truck. When Mr. Guitreau went around the pickup truck's left side, he saw Mr. Inzinna's vehicle "[m]aybe two or three car lengths" in front of him. He also saw that Mr. Inzinna's brake lights and left turn signal were on. Mr. Guitreau hit his brakes and steered towards the ditch on the left side of the road, but could not avoid a collision with Mr. Inzinna's vehicle. At this point, Mr. Guitreau's front-passenger side hit the driver's front door of Mr. Inzinna's vehicle. The collision occurred in the passing lane.
Mr. Guitreau testified that, after the collision, he exited his vehicle to check on Mr. Inzinna and saw Mr. Inzinna crawling out the passenger side of the car. He stated that the only witnesses to the accident were himself, Mr. Inzinna, and Mr. Watkins. Mr. Guitreau testified that he (Mr. Guitreau) "was kind of upset and ... might have said a few words to" Mr. Watkins. Mr. Guitreau alleged that he did not have any conversations with Mr. Inzinna at the scene.
Subsequently, law enforcement from the Killian Police Department arrived at the scene. Mr. Guitreau, who had suffered injuries to both of his hands due to his vehicle's airbags, gave the officer a statement and then left the scene in an Acadian Ambulance. Mr. Guitreau was taken to North Oaks Hospital and treated in the emergency room; he did not require any medical treatment after the initial visit to the emergency room.
At the deposition, Mr. Guitreau was shown a statement written by Mr. Watkins. This statement alleged that Mr. Guitreau had been driving 90 miles per hour when he passed Mr. Watkins's pick-up truck. When asked whether this was correct, Mr. Guitreau stated, "I don't know. I had accelerated to pass him up."
Mr. Guitreau also testified at trial. He reiterated his claims that he had both his lights and sirens activated when the accident occurred. However, he testified that when he attempted his passing maneuver, he was going 60 to 65 miles per hour. He further testified that he began his passing maneuver in a passing zone, but that the accident itself occurred in a no-passing area. He denied that he was going 90 miles per hour as alleged by Mr. Watkins. Mr. Guitreau further testified that Mr. Inzinna did not begin his turn until after Mr. Guitreau was "nose to nose" with Mr. Watkins's pick-up truck. Regarding the sirens, Mr. Guitreau testified that he deactivated his sirens after the accident, but left the emergency lights on.
Mr. Watkins was also deposed. Mr. Watkins testified that he was driving on Highway 22 and had just gone around a curve when he saw Mr. Inzinna's car slowing down with its left-blinker on in front of him. Mr. Watkins stated that, all of a sudden, he saw Mr. Guitreau's vehicle "flying around" him at what Mr. Watkins estimated to be 95 miles an hour. Mr. Watkins stated that there was no way Mr. Guitreau would have been able to stop and that Mr. *588 Guitreau slammed on the brakes and slid about "a hundred feet or more" before hitting Mr. Inzinna's car. Mr. Watkins then stopped and exited his truck and saw Mr. Inzinna climbing out of his vehicle. Mr. Watkins further stated that Mr. Guitreau exited his own vehicle and started "kind of freaking out, hollering about [Mr. Inzinna, calling him] a little kooky and [stating that] he had dealt with him before and [that] he - [Mr. Inzinna] had lied about health issues; and he was extremely rude, very, very mean to [Mr. Inzinna.]"
Mr. Watkins testified that Mr. Guitreau's vehicle had flashing lights, but no siren. He stated that the portion of the highway where the accident occurred has stripes for no passing, because of the curves in the road. He further stated that he believed that the no passing stripe applied to the lane that he (and Mr. Inzinna and Mr. Guitreau) were driving in.
Mr. Watkins also made a written statement on the same day as the accident. In this statement, Mr. Watkins wrote that Mr. Guitreau passed him "going about 90 miles [per] hour with lights flashing[.]" He further wrote that Mr. Inzinna had his left turn signal on and that Mr. Guitreau slammed into the driver's side of Mr. Inzinna's car, spinning it almost off the road. Mr. Watkins wrote that Mr. Inzinna climbed out of his vehicle and said that he was okay, and that Mr. Guitreau "walked up to Mr. [Inzinna] being very rude and stated that he knew Mr. [Inzinna and] that he knew [Mr. Inzinna] had medical problems [and] other things."
Mrs. Inzinna, Mr. Inzinna's wife, was also deposed. She testified that she did not see the collision, but heard the sounds of the collision. She stated that she was standing at the edge of her driveway holding Mr. Inzinna's cell phone, which he had forgotten at home, because she had gone outside to try to catch him before he left. She stated that while she was in the driveway, she saw Mr. Inzinna's vehicle on the road with its left blinker flashing. She also saw Mr. Watkins's pickup truck, which had its turn signal on. Once she saw that Mr. Inzinna was about to turn around, she began to walk back towards her house. She testified that while she was walking back to her house, she "heard an accelerated vehicle" and "glanced out of the corner of [her] eye to see that this car was accelerated and committed to pass." She stated that she then turned her head because she thought there was going to be an accident. Mrs. Inzinna further testified that she did not hear any sirens, nor did she see any emergency lights.
Mrs. Inzinna testified that, after the accident occurred, she and her son-in-law, Brandon Martello, went to the scene of the accident.[2] After the police spoke to Mr. Inzinna, Mr. Martello drove Mr. Inzinna home. Mrs. Inzinna did not speak to the police or make a statement. Mr. Inzinna did not go to the hospital until the next day. Mrs. Inzinna testified that Mr. Martello took pictures of the scene of the accident after the accident occurred. However, Mrs. Inzinna does not have those photographs. Those photos may still be in Mr. Martello's phone, but Mrs. Inzinna does not have access to the phone.
The record also contains the crash report for the accident. According to the crash report, the weather was clear and the road was dry at the time of the accident.
On January 24, 2014, Mr. and Mrs. Inzinna filed a petition for damages against Mr. Guitreau, ABC Insurance Company, District 2, Arch Insurance Company ("AIC"), DEF Insurance Company, District *589 9, American Alternative Insurance Company ("American Alternative"), and XYZ Insurance Company.[3] Specifically, Mr. Inzinna sought damages for various injuries suffered as a result of the accident and Mrs. Inzinna sought damages for loss of consortium.
In their respective answers, Mr. Guitreau, District 9, and American Alternative, admitted that an accident had occurred while Mr. Guitreau was using an emergency vehicle owned by District 9 in the scope of his activities as a volunteer and with full permission. However, they denied liability, alleging that Mr. Guitreau was immune under La. R.S. 32:24.
On March 27, 2017, District 2 and AIC filed a motion for summary judgment. In a supporting memorandum, District 2 and AIC asserted that La. R.S. 32:24 is applicable to this matter, meaning that Mr. Guitreau would only be liable if he committed gross negligence. District 2 and AIC further argued that Mr. Inzinna could not prove that Mr. Guitreau was grossly negligent, and that the defendants in this case were thus entitled to judgment as a matter of law. On April 3, 2017, Mr. Guitreau, District 9, and American Alternative also filed a motion for summary judgment, adopting the arguments made in District 2 and AIC's motion for summary judgment.
On May 15, 2017, the Inzinnas filed a motion for partial summary judgment on the issue of whether the defendants were entitled the immunity provided in La. R.S. 32:24. The Inzinnas argued that Mr. Guitreau was acting with reckless disregard for the safety of others and thus not entitled to immunity under La. R.S. 32:24.
On July 12, 2017, the trial court signed a judgment denying the motion for summary judgment filed by Mr. Guitreau, District 2, and AIC. The trial court also denied the motion for summary judgment filed by Mr. Guitreau, District 9, and American Alternative. The trial court further ordered that the motion for partial summary judgment filed by the Inzinnas be continued.
On November 16, 2017, the trial court dismissed without prejudice District 2 and AIC. This partial dismissal without prejudice did not waive any rights of the Inzinnas against the remaining defendants, Mr. Guitreau, District 9, and American Alternative.
After a bench trial, the trial court signed a judgment on January 22, 2018, assessing the fault of the remaining defendants, Mr. Guitreau, District 9, and American Alternative at 75%. The trial court assessed the remaining 25% of fault to Mr. Inzinna. In its reasons for judgment, the trial court stated that it had found La. R.S. 32:24 to be inapplicable. The trial court noted the disputed facts as to whether Mr. Guitreau had emergency lights on, his siren on, or both, and found Mr. Watkins's testimony that he observed the lights but no siren to be the most credible. The trial court stated that, considering the accident occurred around noon, it would be difficult for a driver to see emergency lights as an emergency vehicle approached. Accordingly, the trial court found that the use of emergency lights alone was not sufficient to warn motorists of Mr. Guitreau's approach and that La. R.S. 32:24 would thus be inapplicable. Because the trial court found that La. R.S. 32:24 did not apply, the trial court analyzed the facts of this case under the ordinary negligence standard and found both parties to be negligent. Specifically, the trial court found that Mr. Inzinna was negligent for failing to adhere to his duty *590 to yield to an oncoming emergency vehicle by attempting to make a left turn into the path of that emergency vehicle. However, the trial court also found that Mr. Guitreau was negligent. The trial court stated that although Mr. Guitreau was in a passing zone when he attempted to pass Mr. Inzinna, he entered into a no-passing zone, and the accident occurred in the same no-passing zone.
On February 22, 2018, Mr. Guitreau, District 9, and American Alternative appealed the trial court's ruling. On February 26, 2018, the Inzinnas also appealed the trial court's judgment.
ASSIGNMENTS OF ERROR
Mr. Guitreau, District 9, and American Alternative assign the following as error:
(1) The trial court committed error when it found that Guitreau's use of emergency lights was not sufficient to warn motorists of his approach as required by La. R.S. 32:24(C).
(2) The trial court committed error when it found that the reckless disregard or gross negligence standard of La. R.S. 32:24 did not apply to Guitreau's actions.
(3) The trial court committed error when it found that Inzinna did not have a duty to yield the right-of-way to an emergency vehicle under La. R.S. 32:125.
(4) The trial court committed error in assessing Guitreau's fault at 75% and Inzinna's fault at only 25%.
The Inzinnas assert one assignment of error:
(1) The trial court erred in finding that Mr. Inzinna was comparatively at fault.
STANDARD OF REVIEW
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993). Under the manifest error-clearly wrong standard, this court employs a two-part test for the reversal of a factfinder's determinations. Bova v. Butler, 2014-0765 (La. App. 1 Cir. 12/23/14), 168 So.3d 551, 554, writ denied, 2015-0172 (La. 4/17/15), 168 So.3d 398 (citing Stobart, 617 So.2d at 882 ). First, this court must find from the record that a reasonable factual basis does not exist for the findings of the trial court. Bova, 168 So.3d at 554. Second, this court must determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. This test requires this court to review the record in its entirety to determine manifest error. Id. This court's determination is not whether the factfinder was correct, but whether the factfinder's conclusion was reasonable. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id. Where there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong. Rabalais v. Nash, 2006-0999 (La. 3/9/07), 952 So.2d 653, 657 (citing Stobart, 617 So.2d at 883 ).
DISCUSSION
Defendants' Assignments of Error # 1 and # 2
In two related assignments of error, the defendants argue that trial court erred in finding that Mr. Guitreau's use of emergency lights was insufficient to warn *591 motorists pursuant to La. R.S. 32:24(C) and thus improperly analyzed Mr. Guitreau's actions under an ordinary negligence standard.
Louisiana Revised Statutes 32:24 states:
A. The driver or rider of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver or rider of an authorized emergency vehicle may do any of the following:
(1) Park or stand, irrespective of the provisions of this Chapter.
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation.
(3) Exceed the maximum speed limits so long as he does not endanger life or property.
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle or bicycle is making use of audible or visual signals, including the use of a peace officer cycle rider's whistle, sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver or rider of an authorized vehicle from the duty to drive or ride with due regard for the safety of all persons, nor shall such provisions protect the driver or rider from the consequences of his reckless disregard for the safety of others. (Emphasis added.)
The Louisiana Supreme Court, in Lenard v. Dilley, 2001-1522 (La. 1/15/02), 805 So.2d 175, held that La. R.S. 32:24 sets forth two standards of care, depending upon the circumstances. Jones v. American Alternative Ins. Corp., 2014-0367 (La. App. 1 Cir. 1/8/15), 169 So.3d 386, 390. If an emergency vehicle driver meets the requirements of Sections A, B, and C, then the driver can be held liable only if his actions rise to the level of "reckless disregard" for the safety of others. Jones , 169 So.3d at 390. On the other hand, if the driver's actions do not meet the prerequisites of Sections A, B, and C, then the driver's actions are to be assessed under the "due regard" or an ordinary negligence standard. Id.
In discussing the two standards, the Louisiana Supreme Court in Lenard explained:
"Due care" is synonymous with ordinary negligence. "Reckless disregard," however, connotes conduct more severe than negligent behavior. "Reckless disregard" is, in effect, "gross negligence." Gross negligence has been defined by this court as "the want of even slight care and diligence. It is the want of that diligence which even careless men are accustomed to exercise." State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942). "Reckless disregard" or "gross negligence" is the standard to be applied if the emergency vehicle driver's actions fit [La. R.S.]. 32:24(A) through [La. R.S.] 32:24(C). Otherwise, the standard is ordinary negligence.
Lenard, 805 So.2d at 180.
It is undisputed that Mr. Guitreau satisfies La. R.S. 32:24(A), because he was responding to an emergency call in Killian, Louisiana when the accident occurred. His actions also fall under La. R.S. 32:24(B).
*592 Mr. Guitreau admitted to exceeding the maximum speed limit on Highway 22, although there is conflicting testimony regarding how fast he was traveling. Additionally, while it is unclear whether Mr. Guitreau was in a passing zone when he began passing Mr. Watkins, the accident occurred in a no-passing zone. Thus, Mr. Guitreau exceeded the maximum speed limits and disregarded regulations governing the direction of movement, thereby satisfying La. R.S. 32:24(B).
The third inquiry is whether Mr. Guitreau's vehicle was "making use of audible or visual signals ... sufficient to warn motorists" of his approach. La. R.S. 32:24(C). The trial court found that Mr. Guitreau's emergency lights were not sufficient to warn of his approach. There is conflicting testimony regarding the signals being used by Mr. Guitreau on the day of the accident. Mr. Guitreau testified in his deposition and at trial that he had both his emergency lights and sirens activated when the accident occurred. Mr. Inzinna testified that he had not seen Mr. Guitreau's vehicle coming and thus did not see any emergency lights. He further testified that he did not hear any sirens prior to or after the accident. Mrs. Inzinna, who was just down the road from the accident, testified that she did not hear any sirens, nor did she see any emergency lights. Mr. Watkins, the driver of the pick-up truck, stated that Mr. Guitreau's vehicle had flashing lights, but no sirens.
In its reasons for judgment, the trial court explained that it had found Mr. Watkins's testimony to be the most credible, because Mr. Watkins has no interest in this litigation. Thus, the trial court determined that Mr. Guitreau's emergency lights had been on, but the sirens had not been on. This determination is a finding of fact, which this court will not set aside unless it is manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. The trial court's factual finding is reasonable and thus we will not disturb it. See Bova, 168 So.3d at 554.
Mere use of a signal or signals is not enough to show compliance with La. R.S. 32:24(C) ; there must be a further showing that use of the signal or signals was "sufficient to warn motorists" of the approach of the emergency vehicle. Jones, 169 So.3d at 391-92. Courts have observed that La. R.S. 32:24(C) does not require that both audible and visual signals be given. Id. at 392. Because we adopt the trial court's finding that Mr. Guitreau's emergency lights were on, but his sirens were not, we must determine whether Mr. Guitreau's emergency lights alone were sufficient to warn motorists of his approach per La. R.S. 32:24(C).
In Guitreau v. City of Gonzales , 2012-0794 (La. App. 1 Cir. 2/13/13), 2013 WL 557018, at *3 (unpublished)[4] , this court considered whether a trial court was correct in concluding that a police officer gave insufficient audible or visual signals to warn motorists of his approach. In Guitreau , a police officer activated his patrol car's blue-flashing lights when pursuing an unidentified vehicle for a seatbelt violation. Guitreau, 2013 WL 557018 at *1. The police officer also activated his "yelp" siren once, producing a single loud burst of sound. Id. at *1. As the police officer was in pursuit, another vehicle attempted a left turn and collided with the patrol car. Id. Regarding the police officer's audible and visual signals, this court stated:
Based on our review of the record ... we find no manifest error in the trial court's factual determination that the visual and audible warnings given by Officer *593 Taylor were insufficient under La. R.S. 32:24(C) ... Even though Officer Taylor activated his flashing blue lights when he pulled into the opposing lane of traffic, those lights obviously did not provide as much warning to a motorist being approached from the rear during the daytime as it would have to a motorist approaching the patrol car from the opposite direction or at nighttime. Furthermore, the dash-cam video reveals that Officer Taylor activated the yelp siren, emitting a short loud blast, only one time as he passed the vehicle behind Ms. Guitreau. He did not reactivate the yelp siren as he approached Ms. Guitreau's vehicle near the intersection where she attempted to turn. Given these facts, we cannot say the trial court's conclusion that Officer Taylor gave insufficient audible or visual signals to warn motorists of his approach in a no-passing zone was manifestly erroneous. (Emphasis added.)
Id. at *3. This court's reasoning in Guitreau regarding the time of day and the fact that the police officer was approaching from the rear applies here. The accident occurred at noon on a clear day, making it more difficult for a motorist to see emergency lights. We also note that there was a vehicle between Mr. Guitreau and Mr. Inzinna, which would have at least partially obstructed Mr. Inzinna's rearview.
The defendants point out that in Guitreau, no eyewitnesses observed the police officer's emergency lights, while in the present case, Mr. Watkins could see Mr. Guitreau's lights flashing. However, Mr. Watkins saw the lights on Mr. Guitreau's vehicle as Mr. Guitreau was speeding past him, which does not mean that Mr. Guitreau's lights were sufficient to warn other drivers.
Time of day was also a factor in Slone v. Greber , 43,471 (La. App. 2 Cir. 8/13/08), 989 So.2d 273, in which a police officer was involved in an accident at dawn and had its lights activated but no siren. In Slone , the second circuit stated:
Regarding the signals on the patrol car, the Statute does not require that both audible and visual signals be given. Therefore, a fact-sensitive inquiry exists regarding whether the flashing lights in this case as opposed to audible signals were sufficient warning. The evidence shows that the accident occurred just before dawn when the streets were relatively dark. The flashing lights atop the vehicle could be viewed by the trial court as reasonable notice in the darkness of this emergency situation. (Emphasis added.)
Slone , 989 So.2d at 279.
We find that the trial court's findings in the present case were not manifestly erroneous. It is reasonable to conclude that Mr. Guitreau's use of his emergency lights at noon on a clear day was not sufficient to warn motorists of his approach, especially considering that there was a vehicle between Mr. Guitreau and Mr. Inzinna prior to Mr. Guitreau's attempt to pass Mr. Watkins's pick-up truck.
Further, because the trial court's finding that Mr. Guitreau's emergency lights were insufficient to warn motorists of his approach was not manifestly erroneous, the trial court properly determined that the "reckless disregard" (or "gross negligence") standard does not apply. Mr. Guitreau does not meet the requirements of 32:24(C) and therefore his actions must be assessed under an ordinary negligence standard. See Jones , 169 So.3d at 390.
These assignments of error lack merit.
Defendants' Assignment of Error # 3
In their third assignment of error, the defendants assert that the trial court erred in finding that Mr. Inzinna did not *594 have a duty to yield the right-of-way to an emergency vehicle under La. R.S. 32:125. Louisiana Revised Statutes 32:125 states in pertinent part:
A. Upon the immediate approach of an authorized emergency vehicle making use of audible or visual signals, ... the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.
...
C. This Section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway.
The trial court held that, consistent with its findings pertaining to La. R.S. 32:24, Mr. Guitreau's use of emergency lights was not sufficient to warn Mr. Inzinna of the approaching vehicle. Thus, the trial court found that La. R.S. 32:125 was inapplicable to the present case.
A driver's duty to yield the right of way to emergency vehicles as prescribed by La. R.S. 32:125 arises only when the motorist observes or hears, or under the circumstances should have observed or heard, the audible and/or visible warnings of the emergency vehicle. Carpenter v. Hartford Acc. & Indem. Co., 333 So.2d 296, 300 (1976). See also Bristol v. Gonzales Police Department, 2017-0675 (La. App. 1 Cir. 12/21/17), 240 So.3d 232, 242 n.4, writ denied, 2018-0146 (La. 3/23/18), 239 So.3d 296. Because we find that Mr. Guitreau's visual warnings were insufficient to warn motorists of his approach, we also find that under the circumstances, the duty to yield provided in La. R.S. 32:125 does not apply.
This assignment of error lacks merit.
Defendants' Assignment of Error # 4 and Plaintiffs' Assignment of Error # 1
In their final assignment of error, the defendants allege that the trial court erred in assessing Mr. Guitreau's fault at 75% and Mr. Inzinna's fault at only 25%. The defendants assert that Mr. Guitreau was not negligent or at fault for the accident, and that Mr. Inzinna's breach of his duty as a left-turning motorist was the sole cause-in-fact of the accident.
The plaintiffs also appeal the trial court's assessment of fault, arguing that Mr. Inzinna should not have been assessed any fault. They assert that because Mr. Guitreau was traveling at an excessive rate of speed in a no-passing portion of the road, Mr. Inzinna had no reasonable opportunity to observe Mr. Guitreau prior to initiating his turn.
Regarding the fault of the parties, the trial court stated in written reasons that "[t]he combination of Mr. Inzinna's left turn with Mr. Guitreau's passing maneuver in a no passing lane would put them both at fault for this accident."
As stated above, if a driver's actions do not meet the prerequisites of La. R.S. 32:24(A), (B), and (C), then the driver's actions are to be assessed under the "due regard" or an ordinary negligence standard. Jones, 169 So.3d at 390. We first address whether Mr. Guitreau was negligent. La. R.S. 32:77(B) states in pertinent part:
B. Where signs or markings are in place to define a no-passing zone ... no driver shall at any time drive on the left side of the roadway within such zone, or on the left side of any pavement striping, *595 designated to mark such no-passing zone, throughout its length.
Mr. Guitreau admitted at trial that the accident occurred in a no-passing zone. Even if Mr. Guitreau began passing Mr. Watkins in a passing zone, Mr. Guitreau still violated La. R.S. 32:77(B) by being on the left side of the roadway within a no-passing zone. Accordingly, we agree with the trial court's finding that Mr. Guitreau was partially at fault for the accident.
Next, we address Mr. Inzinna's alleged negligence. La. R.S. 32:104(A) states in pertinent part that "No person shall ... turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety." Additionally, a left-turning motorist has a strong duty of care that requires not only looking before turning, but also seeing what is observable. Guitreau, 2013 WL 557018 at *4. Mr. Inzinna testified at his deposition that he looked in his rearview mirror twice before turning left into the driveway.[5] However, Mr. Inzinna did not see Mr. Guitreau, who was passing Mr. Watkins as Mr. Inzinna was making his left turn. As noted by the trial court, the amount of fault that can be allocated to Mr. Inzinna "is complicated by the particular area in which the accident occurred" because the accident occurred in a no-passing zone. We agree with the trial court's finding that Mr. Inzinna's left turn contributed to the accident, and that "[t]he combination of Mr. Inzinna's left turn with Mr. Guitreau's passing maneuver in a no passing lane would put them both at fault for this accident."
Because we find that both parties are at fault, we next review the trial court's allocation of fault. The trial court found Mr. Guitreau to be 75% at fault and Mr. Inzinna to be 25% at fault. Like all factual findings, the standard of review of comparative fault allocations is that of manifest error. Leonard v. Ryan's Family Steak Houses, Inc., 2005-0775 (La. App. 1 Cir. 6/21/06), 939 So.2d 401, 410. In determining fault, the trier of fact should consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed. Leonard, 939 So.2d at 410. In the assessment of the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id.
In allocating fault, the trial court looked at two cases: (1) Roberts v. Robicheaux, 2004-1405 (La. App. 3 Cir. 3/2/05), 896 So.2d 1232, writ denied, 2005-0792 (La. 5/13/05), 902 So.2d 1021 ; and (2) Guitreau, 2013 WL 557018.
In Roberts, a driver attempted to pass another vehicle in a no-passing zone. Roberts, 896 So.2d at 1233. As the first driver was attempting to pass, the second driver executed a left-turn into a private driveway and the two vehicles collided. Id. The trial court originally found the two drivers equally at fault and allocated 50% of fault *596 to each. Id. However, on appeal, the third circuit increased the fault of the passing motorist to 75% and decreased the fault of the left-turning motorist to 25%, stating that "[t]he duty to follow statutorily imposed rules and common sense make [the passing driver's] breach a far greater infraction than that of [the left-turning driver]." Id. at 1235. The third circuit summarized its findings by stating, "we find the passing motorist ... to be 75% at fault in causing this accident because he attempted to pass in a "no-passing" zone. We find ... the left turning motorist, to be 25% at fault for improper lookout and signalization." Id. The third circuit referenced these findings in a subsequent case, Plunkett v. Geis, 2008-230 (La. App. 3 Cir. 12/3/08), 2008 WL 5070276 (unpublished), at *3, writ denied, 2009-0013 (La. 2/20/09), 1 So.3d 501, stating that in Roberts, the passing motorist's attempt to pass in a no-passing zone "was the sole basis for which both the trial court and [the third circuit] found the passing motorist was at fault."
We note that the parties in Roberts contested whether the left-turning driver had properly activated her left turn signal, whereas it is undisputed in the present case that Mr. Inzinna's used his left turn signal prior to attempting his turn into the driveway. Roberts, 896 So.2d at 1234. We further note that, unlike Mr. Guitreau in the present case, the passing driver in Roberts was not responding to an emergency. However, because Mr. Guitreau must be held to an ordinary negligence standard, we find the third circuit's findings in Roberts to be persuasive.
The trial court also looked at Guitreau v. City of Gonzales, wherein a police officer was hit by a vehicle attempting a left turn. Guitreau, 2013 WL 557018 at *1-3. The trial court in Guitreau originally allocated 60% fault to the police officer and 40% fault to the left-turning driver. Id. at *1. This court found that allocation to be manifestly erroneous and amended the judgment to assess the police officer with 75% fault and the left-turning driver with 25% fault. Id. at *2-4. This court noted that the police officer, who was in pursuit of a suspected seatbelt violator and thus in a non-emergency situation, "deliberately chose to ignore a no-passing zone." Id. at *4. The police officer had "pulled into the opposing lane of traffic and attempted to pass two vehicles as the vehicles approached an intersection without giving sufficient warnings of his presence." Id. This court further stated:
Not only did [the police officer's] conduct create a greater risk of harm than [the left-turning driver's] conduct, it also was intentional conduct, whereas [the left-turning driver's] was merely inattentive. Given these circumstances, the judgment of the trial court will be amended to assess [the police officer] with seventy-five percent fault an [the left-turning driver] with twenty-five percent fault.
Id. at *4.
We again note that the police officer in Guitreau was not responding to an emergency, while Mr. Guitreau in the present case was in fact responding to an emergency.
In the present case, the trial court noted the similar circumstances between Roberts, Guitreau, and the case before the court. Because of those similarities, the trial court adopted the same percentages of fault, allocating 75% of fault to Mr. Guitreau and 25% of fault to Mr. Inzinna.
Considering the jurisprudence, we cannot say that the trial court was manifestly erroneous in its allocation of fault. Although there are a few factual differences between the present case and the facts in Roberts and Guitreau , the negligent acts themselves are similar. Like Roberts and *597 Guitreau, the accident occurred while Mr. Guitreau was in a no-passing lane. Mr. Guitreau admitted that he was driving at least 60 miles an hour, while Mr. Watkins alleged that Mr. Guitreau was driving 90 miles an hour. Further, like the parties in Guitreau, Mr. Guitreau was aware of the danger of driving in a no-passing zone, while Mr. Inzinna's failure to see Mr. Guitreau was inadvertent. Thus, although Mr. Guitreau's intentions were to reach the scene of an emergency, his manner of doing so contributed in large part to the accident with Mr. Inzinna. Accordingly, we find that the trial court did not manifestly err in allocating 75% of fault to Mr. Guitreau and 25% of fault to Mr. Inzinna.
CONCLUSION
For the above and foregoing reasons, the judgment of the Twenty-First Judicial Court is affirmed. Costs of the appeal are to be split with Troy Odem Guitreau, Livingston Parish Fire Protection District No. 9, and American Alternative Insurance Corporation paying 50%, and Nunzio Inzinna and Emily Inzinna paying 50%.
AFFIRMED.

Mr. Guitreau testified that there was an agreement between District 2 and District 9 wherein one could automatically respond to dispatches from the other, depending on the nature of the call.

Mr. Martello is now deceased.

Although the petition is dated January 30, 2014, the record indicates that this petition was fax-filed on January 24, 2014.

The plaintiff in the cited case is different than Mr. Guitreau in the present case.

The defendants allege that Mr. Inzinna is visually impaired and assert that this impairment rendered Mr. Inzinna "completely unable to ensure that he could safely execute his left turn." However, there is nothing in the record to suggest that Mr. Inzinna's visual restrictions contributed in any way to the accident.